**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Gregory WALSH,
Defendant-Appellant.**

No. 85–1002.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1985.

Decided Sept. 12, 1985.

Stephen M. McNamee, U.S. Atty., Rhonda L. Repp, Phil Espinosa, Asst. U.S. Attys., Tucson, Ariz., for plaintiff-appellee.

Nancy Grey Postero, Keller & Postero, Tucson, Ariz., for defendant-appellant.

Before POOLE and REINHARDT, Circuit Judges, and KELLER,* District Judge.

POOLE, Circuit Judge:

James Walsh appeals his conviction under 18 U.S.C. § 1382[1] for trespass on a military installation after receiving an order not to reenter the Davis-Monthan Air Force Base. For reasons set forth below, we affirm.

On April 15, 1984, Walsh participated in a demonstration against cruise missiles near the entrance gate to Davis-Monthan. The demonstration occurred on land owned by the United States but upon which an easement had been granted to the City of Tucson, Arizona. Toward the end of the demonstration, Walsh and several other demonstrators crossed a street and approached a parcel of land bounded by a three-strand wire fence. The fence was posted with signs warning that the land was federal property and that trespassing was prohibited. At a gap in the fence, an Air Force Major stood and warned the demonstrators that they were entering the military base and could not demonstrate there. Nevertheless, the demonstrators, including Walsh, entered the land; they disbanded a short time later.

Walsh had been arrested for trespassing at the base on October 22, 1983, and December 12, 1983. As a result, he received two "ban and bar letters" from the base commander: the first ordered him not to reenter the base for one year, and the second barred him from the base permanently.

The land upon which Walsh and other demonstrators entered on April 15, 1984 had been unfenced before October, 1983, and had been the site of rallies and demonstrations. The Air Force erected the three-strand wire fence on October 21, 1983, the eve of a demonstration. Thus, on April 15, 1984 the land was bounded on the north and west by the seven foot fence which surrounds Davis-Monthan, on the south by newly completed Golflinks Road, and on the east by Craycroft Road. The three-strand fence ran from north to south along Craycroft Road, and a portion of the fence was open to allow construction vehicles to pass.

At his trial for violating Section 1382, Walsh claimed that his activities on April 15, 1984 were protected by the First Amendment. The district judge disagreed, and convicted him after a bench trial. Walsh received a suspended sentence of six months, a year's probation, and a $250 fine. On appeal, Walsh again claims that his

---

* The Honorable William D. Keller, United States District Judge for the Central District of California, sitting by designation.

1. Section 1382 provides that

 Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation; or

 Whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station, or installation, after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof—

 Shall be fined not more than $500 or imprisoned not more than six months, or both.

entry upon military land was protected by the First Amendment.

Recent Supreme Court precedent clearly indicates that Walsh's argument lacks merit. In *United States v. Albertini*, 710 F.2d 1410 (9th Cir.1983), this court held that Albertini, who had previously received a bar letter, could not be convicted for violating 18 U.S.C. § 1382 because he had a First Amendment right to enter a military base during an open house. *Id.* at 1417. The Supreme Court reversed and remanded, holding that "[w]here a bar letter is issued on valid grounds, a person may not claim immunity from its prohibition on entry merely because the military has temporarily opened a military facility to the public." — U.S. —, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985).

■ Thus, the Court held that Section 1382 applies even during an open house, and excluding Albertini from the open house on the base did not violate the First Amendment. According to the Court, the statute is content-neutral, and serves a significant government interest by banning from military bases persons who have demonstrated that they are a threat to security. *Id.* The First Amendment does not bar application of a neutral regulation that incidentally burdens speech, despite the fact that there might be an alternative that is less burdensome upon speech. *Id.* 105 S.Ct. at 2907.

■ The present case presents facts which fall even more clearly within the restrictions of Section 1382 than did the facts of *Albertini*. Walsh did not enter Davis-Monthan to participate in an open house. Rather, after receiving a bar letter he entered military land, despite a fence, signs and verbal warnings not to enter. This conduct violated the literal terms of Section 1382, which prohibits reentry upon a military installation after being ordered not to reenter. Following *Albertini*, we conclude that Walsh's conviction must be affirmed.

Walsh makes an additional argument. He asserts that the Supreme Court's decision in *Albertini* is an unexpected reversal of the existing law, as embodied in the Ninth Circuit's *Albertini* decision, *Flower v. United States*, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972) (per curiam), and *United States v. Douglass*, 579 F.2d 545 (9th Cir.1978). As a result, Walsh claims that retroactive application of the Supreme Court's ruling in *Albertini* to his conduct would constitute the imposition of an ex post facto law.

■ Judicial decisions are not subject to the constitutional prohibition against ex post facto legislation. *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977); *Camitsch v. Risley*, 705 F.2d 351, 355 (9th Cir.1983). But applying a judicial decision retroactively may violate due process if the court's interpretation of a criminal statute enlarges its scope to cover behavior not considered unlawful in the past. *Marks*, 430 U.S. at 191–92, 97 S.Ct. at 992–93; *Camitsch*, 705 F.2d at 355. We have noted that a radical and unforeseen departure from prior law must be involved to implicate the ex post facto clause. *United States v. Wilder*, 680 F.2d 59, 60 (9th Cir.1982). As the Supreme Court observed,

> [t]he fundamental principle that "the required criminal law must have existed when the conduct in issue occurred," must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue," it must not be given retroactive effect.

*Bouie v. City of Columbia*, 378 U.S. 347, 354, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964) (citation omitted).

The difficulty with Walsh's position is that he could not properly rely on our decision in *Albertini*, since that decision never became settled circuit law. To the contrary, it was reversed by the Supreme Court. Second, the Supreme Court's *Albertini* decision was not an unforeseen departure from nor reversal of prior law.

That decision did not enlarge the scope of Section 1382 to cover behavior not considered unlawful in the past.

■ Review of relevant precedent confirms this conclusion. In public institutions which do not perform speech-related functions, such as military bases, the government may exclude expression which interferes in any way with the functioning of the institution. *Douglass*, 579 F.2d at 549. In addition to time, place and manner regulations, the government may reserve such institutions for their intended purpose, as long as the regulation of expression is reasonable and not content related. *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). Military installations exist to train soldiers, and not to provide a public forum. *Greer v. Spock*, 424 U.S. 828, 838, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505 (1976). Thus the Supreme Court in *Greer* upheld military regulations prohibiting partisan political speeches, demonstrations, and the distribution of political material.

While the Court summarily reversed a conviction under Section 1382 in *Flower v. United States*, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653, that case involved a civilian who entered a military installation after a bar letter, but who was distributing leaflets on an unrestricted public thoroughfare within the base. *Flower* established only that where a portion of a military base has become a public forum because the military abandoned any right to exclude civilian traffic or regulate expression, a person may not be excluded because of activity protected by the First Amendment. *Id.* at 198–99, 92 S.Ct. at 1843–44. *See also Greer*, 424 U.S. at 835, 96 S.Ct. at 1216 (*Flower* based upon fact that petitioner was distributing leaflets on a public thoroughfare, and that military had abandoned right to exclude traffic from the thoroughfare); *Albertini*, 105 S.Ct. at 2905.

Thus, we affirmed the conviction under Section 1382 of a defendant who entered military property by crossing a clearly marked white boundary line in *Douglass*,

579 F.2d 545. The land at issue in *Douglass* was not within the fence enclosing the base, but it was also not open to the public or a public forum—it was the "door step" of the base. *Id.* at 549.

■ In the present case, it is true that the land Walsh entered on April 15, 1984 had been unfenced in the past, and that demonstrations had occurred upon it. But on April 15, the land could not be considered a public forum. A three-strand wire fence marked the boundary of the land Walsh approached, and warning signs indicated that the land was federal property, upon which trespassing was forbidden. An Air Force officer stood at a gap in the fence, warning demonstrators that they were entering the base and could not demonstrate there. The occurrence of rallies and demonstrations on the land in the past, before it was fenced in, may have converted it to a public forum. But although the government may have opened public property for expressive activity, it is not required to retain the land's open character indefinitely. *Perry Education Ass'n*, 460 U.S. at 46, 103 S.Ct. at 955. Moreover, *Albertini* indicates that whether or not a base is a public forum, the military may exclude recipients of bar letters without violating the First Amendment. 105 S.Ct. at 2906. Thus, *Albertini* did not depart from nor reverse existing law.

■ Finally, even had our decision in *Albertini* been upheld by the Supreme Court, we would have to hold, as the analysis above shows, that Walsh's conduct violated Section 1382 and was not protected by the First Amendment. *Albertini* involved the presence of a bar letter recipient at a military open house, while Walsh entered upon a closed military base. Walsh's conduct was as illegal before the Supreme Court's decision in *Albertini* as after.

Therefore, Walsh's conviction must be AFFIRMED.