**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Vincent ALBERTINI,
Defendant-Appellant.**

No. 86–1229.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1987.

Decided Oct. 15, 1987.

Gary L. Beaver, Honolulu, Hawaii, for plaintiff-appellee.

Carola Mone, Berkeley, Cal., for defendant-appellant.

Before GOODWIN, BEEZER and THOMPSON, Circuit Judges.

GOODWIN, Circuit Judge.

James Vincent Albertini appeals his conviction on two counts of violating 18 U.S.C. § 1382 (1982) for distributing political leaflets outside the gate of the Pearl Harbor naval base. Albertini's appeal raises three main issues: (1) whether his leafletting was protected by the first amendment; (2) whether he was denied his constitutional right to a speedy trial; and (3) whether he was denied due process of law when the trial court retroactively applied a Supreme Court case that reversed a Ninth Circuit decision holding that his conduct was not illegal. Additionally, the government moved to dismiss this appeal for Albertini's alleged procedural errors.

From 1972 to 1981, Albertini received a series of "bar letters" denying him access to a number of military bases in Hawaii. The bar letters were the military's response to Albertini's peace and nuclear disarmament demonstrations conducted at certain bases. The bar letters forbade him from reentering bases without written permission from the commander or a designate, citing 18 U.S.C. § 1382, which provides:

> Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation; or

> Whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station, or installation, after having been removed therefrom *or ordered not to reenter by any officer or person in command or charge thereof—*

> Shall be fined not more than $500 or imprisoned not more than six months, or both.

18 U.S.C. § 1382 (1982) (emphasis added).

On May 16, 1981, Albertini and four companions entered Hickam Air Force Base during the base's annual Armed Forces Day open house. The group conducted a peaceful demonstration criticizing the nuclear arms race. Albertini took photographs of the displays while his companions passed out leaflets and unfurled a banner in front of a B–52 bomber display. An officer recognized Albertini and recalled that he had been barred from Hickam nine years before. Albertini and his companions were escorted off the base. Albertini was convicted after a bench trial of violating § 1382.

He appealed the conviction, and on July 22, 1983, this court held that the military had transformed Hickam into a temporary public forum during the open house and that it thus could not exclude even the holder of a bar letter from peaceful expressive activity. *United States v. Albertini,* 710 F.2d 1410, 1417 (9th Cir.1983), *rev'd,* 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985).

In December 1983, about 18 months before the Supreme Court reversed Albertini's case, Albertini's lawyer wrote the Pearl Harbor commander to inform him that Albertini intended to exercise his first amendment rights under his recent court decision by distributing peace materials at the next Navy "visit ship" open house.

The Navy responded by serving Albertini with a letter barring him from entering a number of military bases in Hawaii, including the Pearl Harbor base. The Pearl Harbor base commander also sent Albertini's lawyer a letter expressing his intention to bar Albertini access to the base, claiming that the *Albertini* decision was inapplicable

because a "visit ship" open house was distinguishable from other open houses. The letter did not explain the distinctions between Armed Forces Day open house and "visit ship" open houses.

On February 4, 1984, Albertini and seven others arrived at Pearl Harbor's main gate (the Nimitz gate) with the intention of peacefully distributing leaflets during the "visit ship" open house. Albertini introduced himself to a base policeman and handed him a copy of this court's *Albertini* decision. Albertini was told by the sentry at the gate that he would be arrested if he passed through the gate. Albertini and his companions accordingly altered their plans and decided to leaflet on the sidewalk outside the fenced-in portion of the base, in front of the sentry control shack which was adjacent to the traffic control podium.

The military police soon asked them to leave that area, saying they were still on military property, even though they were outside the fenced portion of the base. No visible marker delineated the boundary of the base property. Albertini alone was arrested while he and his companions waited for an officer who had offered to draw the property line in chalk on the pavement.

On March 3, 1984, the Navy held another "visit ship" open house, prior to which security personnel were shown photos of Albertini. Albertini and others again appeared at the Nimitz gate to distribute peace materials. After Albertini was informed that he would not be allowed on the base, he and at least one other person began leafletting on the sidewalk outside the sentry gate. A military guard then approached them and told them they would have to move because they were on military property. Albertini again was arrested.

On April 7, 1984, Albertini and several companions again went to the Nimitz gate to leaflet at another naval open house. He was again arrested on the sidewalk in front of the sentry control shack.

The arrests arising from the leafletting activities on Feb. 4, March 3 and April 7, 1984, form the basis of this appeal. The government petitioned the Supreme Court for certiorari in *Albertini (9th)* on April 3, 1984, between the dates of the March 3 and April 7 demonstrations.

On April 24, Albertini moved on the basis of his Ninth Circuit decision to dismiss the information filed against him on April 18 for three counts of trespassing in violation of 18 U.S.C. § 1382. Over Albertini's objection, the district court granted the prosecution's motion to continue indefinitely the trial date on the ground that the government had petitioned for certiorari.

The Supreme Court granted certiorari in *Albertini (9th)* December 3, 1984, 469 U.S. 1071, 105 S.Ct. 562, 83 L.Ed.2d 504 (1984). The Court reversed *Albertini (9th)* in June 1985, holding: (1) that a military base is not a public forum, and that Hickam did not become such a forum on Armed Forces Day merely because the public had been invited and ideas were being communicated; and (2) that even if Hickam constituted a public forum on the day of the open house, Albertini's receipt of a bar letter distinguished him from the general public and provided a reasonable ground for excluding him from the base. *Albertini*, 472 U.S. at 684–90, 105 S.Ct. at 2904–08. The Court reasoned that the exclusion of bar letter recipients from military open houses does not infringe the first amendment because such an exclusion promotes an important governmental interest in assuring the security of military installations. *Id.* at 687–89, 105 S.Ct. at 2906–07.[1]

Six months later, in December 1985, the government recalendared Albertini's trial for the three 1984 offenses. Albertini's motion to dismiss the amended information was again denied.

In July 1986, a jury found Albertini not guilty as to the February 4 incident, but guilty of violating 18 U.S.C. § 1382 as to the March 3 and April 7 counts. He was

---

**1.** On remand, this court decided in light of the Supreme Court opinion, that due process did not require the Hickam commander to hold a hearing before issuing the bar letter; nor did the enforcement of the bar letter offend due process. *United States v. Albertini*, 783 F.2d 1484, 1486–88 (9th Cir.1986).

sentenced to two consecutive six-month prison terms, which were suspended, two concurrent five-year probation terms and 200 hours of community service involving physical, not mental, activity.

## I. DUE PROCESS CLAIM

We do not reach the questions presented under the first amendment and the Speedy Trial Act because we reverse the judgment on the basis of Albertini's due process claim.

Albertini argues that he protested outside the Pearl Harbor naval base during the "visit ship" and open house events in reliance on this court's decision favorable to his position in his own case. He argues that due process precludes the retroactive application of the Supreme Court's reversing decision to the trespass charges based on the very conduct that this circuit had held in *Albertini (9th)* to be constitutionally protected.

The narrow question we must decide is whether a person whose conduct has been tried in court and vindicated on appeal can rely upon the court's decision in repeating the same conduct after receiving the appellate judgment, when the government has either filed a petition for certiorari or still has time to file such a petition, and the Supreme Court has not acted to grant or deny the petition. Conceptually, the tension is between the policy against *ex post facto* laws and the power of the Supreme Court to correct any errors of law that have been made by the inferior federal courts.

The government claims that the litigation in which Albertini's claims were ultimately resolved against him by the Supreme Court was a unitary case or controversy and that this court could create no window of opportunity to engage in challenged conduct while Supreme Court review was still a possibility. Albertini says that after he received a favorable decision from this court, and at least before the petition for certiorari was granted, he was acting within his adjudicated legal rights and had a due process right to rely upon the judgment of this court.

The United States Constitution provides that neither Congress nor any state shall pass any *ex post facto* law. U.S. Const. art. I, § 9, cl. 3; art. I, § 10, cl. 1. *See Miller v. Florida,* —— U.S. ——, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987). The prohibition against *ex post facto* enactments bans "[e]very law that makes an action" done before the passing of the law, and which was innocent when done, criminal; and punishes such action." *Id.* at 2450 (quoting *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)).

Although the *ex post facto* clause applies to the legislature and not to the courts, "the principle on which the Clause is based—the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties—is fundamental to our concept of constitutional liberty." *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977). Hence, the judicial enlargement of a criminal statute by retroactive application violates the fifth amendment due process clause in the same way a legislative enlargement does. *Id.* 430 U.S. at 192, 97 S.Ct. at 993; *Camitsch v. Risley,* 705 F.2d 351, 355 (9th Cir.1983).

The government contends that this issue has already been decided in its favor. In *United States v. Walsh,* 770 F.2d 1490 (9th Cir.1985), this court reasoned that another protester who was also a bar letter recipient could not properly rely on the very Ninth Circuit decision in issue here, *Albertini (9th),* because that decision was reversed by the Supreme Court and thus never became settled circuit law. *Id.* at 1492. Additionally, the *Walsh* court stated that the Supreme Court's *Albertini* decision was not an unforeseen departure from or reversal of prior law; it "did not enlarge the scope of Section 1382 to cover behavior not considered unlawful in the past." *Id.* at 1492–93.

*Walsh's* language about the due process argument is obiter, however, as the court held that Walsh's conduct was not protected by the first amendment even under *Albertini (9th). Id.* at 1493. The *Walsh* case noted that *Albertini (9th)* involved the

presence of a bar letter recipient at a military open house, whereas *Walsh* involved a bar letter recipient's entry on a closed military base: "Walsh's conduct was as illegal before the Supreme Court's decision in *Albertini* as after." *Id.* We agree that Walsh could not depend on *Albertini (9th)*, but *Walsh* does not hold that Albertini could not rely on our holding.

■ The concept of "settled circuit law" and the government's argument that *Albertini* in the Supreme Court was not an unforeseen departure from prior law are inapplicable in the instant case. In effect, Albertini obtained a declaratory judgment from this court that the actions in which he engaged were lawful. If the due process clause is to mean anything, it should mean that a person who holds the latest controlling court opinion declaring his activities constitutionally protected should be able to depend on that ruling to protect like activities from criminal conviction until that opinion is reversed, or at least until the Supreme Court has granted certiorari.[2] *See United States v. Mancuso*, 139 F.2d 90, 92 (3rd Cir.1943) (reasoning that defendant could rely on district court's order and was not subject to criminal penalties for act or omission until the district court's initial decision was reversed or vacated); *State v. Jones*, 44 N.M. 623, 630–31, 107 P.2d 324, 329 (1940); *State v. Longino*, 109 Miss. 125, 131–35, 67 So. 902, 903–04 (1915); *State v. O'Neil*, 147 Iowa 513, 514–23, 126 N.W. 454, 454–57 (1910).

■ In its pretrial motion in limine to exclude evidence of *Albertini (9th)* from the trial, the government argued that mistake of law is never a defense. There is an exception to the mistake of law doctrine, however, in circumstances where the mistake results from the defendant's reasonable reliance upon an official—but mistaken or later overruled—statement of the law. *See United States v. Duggan*, 743 F.2d 59, 83 (2d Cir.1984); *Kratz v. Kratz*, 477 F.Supp. 463, 480 (E.D.Pa.1979). "It would be an act of 'intolerable injustice' to hold criminally liable a person who had engaged in certain conduct in reasonable reliance upon a judicial opinion instructing that such conduct is legal." *Kratz*, 477 F.Supp. at 481 (footnotes omitted). As delineated by Section 2.04 of the Model Penal Code,[3] the doctrine may in some circumstances protect a defendant's reasonable reliance on official advisory opinions, such as an Attorney General's opinion. *See United States v. Barker*, 546 F.2d 940, 956 (D.C.Cir.1976) (Merhige, J., concurring). The doctrine is applied most often when an individual acts in reliance on a statute or an express decision by a competent court of general jurisdiction, which is later overruled. *Id.*

This court unanimously held in *Albertini (9th)* that the Air Force could not refuse to admit a bar letter recipient to a military base because the Air Force had turned the base into at least a limited public forum during the hours of a base open house. The government argues that a "visit ship" open house is more restricted than a regular "open house." We note, however, that certain areas were closed to the public even in the arguably less restricted "open house" in *Albertini (9th)*, and that Albertini peacefully confined himself to the areas

---

2. We do not reach the issue raised in *Walsh* because Albertini relied upon a court opinion concerning his own actions. We also need not reach the issue whether Albertini would have been justified in relying upon *Albertini (9th)* in the period after the Supreme Court granted certiorari and before it reversed *Albertini (9th)*.

3. The applicable Model Penal Code section provides:

(3) A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when:

.    .    .    .    .

(b) [the actor] acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in (i) a statute or other enactment; (ii) *a judicial decision, opinion or judgment;* (iii) an administrative order or grant of permission; or (iv) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense.

American Law Institute, Model Penal Code § 2.04(3)(b) (1985) (emphasis added).

set aside for the open house. *Albertini (9th),* 710 F.2d at 1412–13.

We also note that Albertini tried to comply with the military authorities by remaining outside the fenced-in area of the base, even though *Albertini (9th)* arguably permitted him access within the gates' confines when the military had opened the base to the public. We do not reach Albertini's first amendment arguments concerning the boundary of military control at the base, but we note that he was more deferential to the military police than *Albertini (9th)* suggested would have been necessary.

Hence, Albertini acted during a window of time when he reasonably believed his acts were protected under *Albertini (9th).* He cannot be convicted for acting in reliance on that opinion, at least until the Supreme Court has granted certiorari. *See Marks,* 430 U.S. at 191–92, 97 S.Ct. at 992–93; *Mancuso,* 139 F.2d at 92. To hold otherwise would sanction a kind of "entrapment" by the government—convicting Albertini for acts that the government has told him are protected by the first amendment against prosecution. *Cox v. Louisiana,* 379 U.S. 559, 571, 85 S.Ct. 476, 484, 13 L.Ed.2d 487, *reh'g denied,* (1965) (concluding that due process prevented the conviction of a defendant "entrapped" by a police chief who advised him to protest across the street to avoid conviction under a statute prohibiting demonstrations "near" the courthouse); *Raley v. Ohio,* 360 U.S. 423, 425–26, 79 S.Ct. 1257, 1259–60, 3 L.Ed.2d 1344 (1959) (holding that convictions violated due process where a state investigating commission had assured witnesses that they could invoke their privilege against self-incrimination but where the court later denied them the privilege).

"When the 'entrapment' has been caused by a judicial opinion, the argument in favor of recognizing the reliance defense is even more compelling, since courts are the very entities charged with interpreting the law." *Kratz,* 477 F.Supp. at 482 n. 51. As the Third Circuit noted in *Mancuso:*

> We think the defendant cannot be convicted for failing to obey an order, is-

suance of which is forbidden by the court's injunction. While it is true that men are, in general, held responsible for violations of the law, whether they know it or not, we do not think the layman participating in a law suit is required to know more law than the judge.

*Mancuso,* 139 F.2d at 92 (footnote omitted); *see also Longino,* 109 Miss. at 135, 67 So. at 904.

## II. THE GOVERNMENT'S MOTION TO DISMISS THIS APPEAL

On January 8, 1987, the government moved this court to dismiss this appeal on several procedural grounds. The government argues that Albertini (1) failed to include in the record on appeal certain transcripts; (2) failed to include in his opening brief the standard of review or to designate which rulings or orders he was appealing; and (3) raised the due process claim for the first time on appeal. Even in the aggregate, the errors complained of are not so egregious as to warrant dismissal of the appeal.

As to the government's first complaint, the failure to include the exhibits as part of the record on appeal is of little consequence because the exhibits were available in time for oral argument. The exhibits were also irrelevant on the issue upon which the appeal is based.

We also do not find the absence of the transcript of jury instructions critical to support Albertini's due process argument. The trial transcript repeatedly mentions the fact that the parties agreed before trial that they would not discuss the existence of *Albertini (9th)* in front of the jury. There thus is sufficient evidence of the absence of any kind of information or instruction on this issue even without the jury instructions.

As to the second issue, neither of these flaws is fatal under the circumstances of this case.

The third issue, likewise, does not warrant dismissal. Albertini has preserved his right to appeal the denial of his due process claim through his various pretrial

objections to both the prosecution and to the motion in limine which the trial court granted, disallowing any exposure of *Albertini (9th)* to the jury. But assuming, arguendo, that he failed to raise the due process claim until the instant appeal, a due process objection may be raised for the first time on appeal under Fed.R.Crim.P. 52(b) as a defect affecting Albertini's substantial rights.

Reversed.