**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John Daniel RAFFERTY, aka John Sullivan, Defendant–Appellant.**

**No. 89–10257.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1990.

Decided Aug. 10, 1990.

Peter C. Wolff, Jr., Hart & Wolff, Honolulu, Hawaii, for defendant-appellant.

Lou Braco and Michael K. Kawahara, Asst. U.S. Attys., Honolulu, Hawaii, for plaintiff-appellee.

Before WALLACE, ALARCON and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

John Daniel Rafferty appeals from his sentence imposed under the sentencing commission guidelines ("guidelines") following his plea of guilty for possession and possession with intent to distribute twenty pounds of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 844(a) (1988). The district court imposed a $50,000 fine and a term of imprisonment six months greater

than the maximum prescribed by the guidelines. We affirm in part, and vacate and remand in part.

## FACTS AND PROCEEDINGS

John Rafferty was arrested on October 18, 1988, at the Honolulu International Airport for possession of twenty pounds of marijuana. Following his arrest, Rafferty provided false information to DEA agents regarding his identity, address, and telephone number in Honolulu, Hawaii. Rafferty was flying under the name of "John Sullivan" and had in his possession identification cards, bank cards, and credit cards in his own name and in the names of "John Harrington" and "John Sullivan."

On October 19, 1988, Rafferty was charged in a two-count indictment. Count 1 charged Rafferty with possession with intent to distribute approximately twenty pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). Count 2 charged Rafferty with possession of the same amount of marijuana in violation of 21 U.S.C. § 844(a). At his detention hearing on October 21, 1988, Rafferty falsely testified that "John Harrington" was a real person and that he had never represented himself to be "Harrington." Subsequent investigation revealed that "Sullivan" and "Harrington" were aliases used by Rafferty to conceal his true identity from drug authorities.

Following his arrest and indictment, six properties (condominiums) were seized from Rafferty as purchased by drug proceeds pursuant to 21 U.S.C. § 881. Rafferty had a total equity interest of approximately $433,000 in five of the unsold units and an additional $179,954.56 in net proceeds due from the sale of the sixth unit. While Rafferty's mother was the record owner of these properties, Rafferty has conceded actual ownership. Approximately $7,000 was also seized from several escrow accounts and a checking account under the name of "John Harrington." Rafferty did not file adverse claims in these civil forfeiture proceedings.

Pursuant to a plea agreement accepted by the court, Rafferty pled guilty to both counts on December 12, 1988. On May 11, 1989, the district court sentenced Rafferty to concurrent sentences of thirty-six months of incarceration and five years of supervised release on Count 1, and twelve months of incarceration and one year of supervised release on Count 2. The court also imposed a $50,000 fine on Count 1 and a concurrent $1,000 fine on Count 2, plus a special assessment of $75.00.

Rafferty was sentenced under the guidelines. The court applied a criminal history category of II as a result of Rafferty's prior conviction in 1978 for credit card fraud. Section 2D1.1(a)(3) (1988)[1] of the guidelines provided that offenses involving 5 to 9.9 kilograms (or twenty pounds) of marijuana have a base offense level of fourteen. The sentencing court found that a two-level upward adjustment in offense level for obstruction of justice was warranted, while a two-level downward adjustment for acceptance of responsibility was not, because Rafferty attempted to impede the investigation by providing false information to the DEA agents and by testifying untruthfully at the detention hearing. The court also imposed a term of imprisonment six months *greater* than the guideline range of twenty-four to thirty months because Rafferty "had engaged in a long-standing and calculated drug trafficking enterprise which was not adequately reflected in the guidelines." Rafferty timely appeals from this sentence.

## DISCUSSION

### I. UPWARD DEPARTURE FROM THE GUIDELINES

■ Rafferty claims the district court erred in upwardly departing from the sentencing guidelines without prior notice, and in basing its upward departure upon factors already accounted for in the guidelines. We review the legality of a criminal sentence de novo. *United States v. Cervantes–Lucatero*, 889 F.2d 916, 917 (9th Cir.1989).

---

**1.** All guideline citations will be to the 1988 version unless otherwise noted.

■ Prior to imposing a sentence greater than that set by the guidelines, the sentencing court must advise the defendant and his counsel of the proposed upward departure, and give the defendant an opportunity to comment. *See United States v. Nuno–Para*, 877 F.2d 1409, 1415 (9th Cir.1989). Failure to notify the defendant prior to sentencing of the basis for the upward departure violates Fed.R.Crim.P. 32(a)(1). *Id.*

Fed.R.Crim.P. 32(a)(1) [2] and 18 U.S.C. § 3553(d) [3] indicate that the presentence report or the court must inform the defendant of factors that they consider to constitute grounds for departure. This requirement is not satisfied by the fact that the relevant information is present within the presentence report. Rather, such information either must be identified as a basis for departure in the presentence report, or, the court must advise the defendant that it is considering departure based on a particular factor and allow defense counsel an opportunity to comment.

*Id.* (citations and footnote omitted). Failure to give such notice will necessitate a resentencing. *Id.*

■ The government concedes that "the District Court never expressly said prior to imposition of sentence on May 11, 1989 that it was contemplating a departure on the basis of defendant's extensive marijuana trafficking activities." Appellee's Brief at 28. In addition, Rafferty's Presentence Report, to which the government did not object, expressly stated that "[t]here is no aggravating or mitigating circumstance concerning the instant offense or the offender that would warrant a departure from the presented guideline range." Thus, Rafferty was given no notice of the proposed upward departure either in the

presentence report or by the court prior to the imposition of sentence.

We reject the government's argument that *Nuno–Para*'s notice requirement should not apply here because it should have been "readily apparent" to Rafferty that the extensive marijuana proceeds and holdings could be used to justify an upward departure. *Nuno–Para* unequivocally holds that the presentence report or the court must specifically identify those factors which justify an upward departure and then allow the defendant an opportunity to comment prior to sentencing. Rafferty was not notified nor was he given an opportunity to comment on the upward departure. Accordingly, the sentence must be vacated and the case remanded for resentencing.[4]

## II. ACCEPTANCE OF RESPONSIBILITY

■ Rafferty argues that the district court erred in failing to afford him a downward adjustment in offense level for acceptance of responsibility. The Presentence Report concluded that an adjustment under section 3E1.1 (Acceptance of Responsibility) was not warranted because Rafferty testified untruthfully and attempted to obstruct the administration of justice by lying to the DEA agents. Relying on Application Note 4 of section 3E1.1, the district court held that "[i]f a defendant is given a two level increase for obstruction of justice under § 3C1.1, he cannot be granted a two level decrease for acceptance of responsibility."

At the time Rafferty was sentenced, Application Note 4 to section 3E1.1 provided: "An adjustment under this section [Acceptance of Responsibility] is not warranted where a defendant perjures himself, su-

---

**2.** Fed.R.Crim.P. 32(a)(1) provides in part: "At the sentencing hearing, the court shall afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence."

**3.** Section 3553(d) requires that the court permit the parties to submit materials addressing the

accuracy of the presentence report prior to the imposition of sentence.

**4.** Because we find that Rafferty was not given notice of nor an opportunity to comment on the upward departure and therefore must be resentenced, we do not reach the question of whether the district court properly departed on the grounds stated or whether the findings were sufficient to support that departure.

borns perjury, or otherwise obstructs the trial or the administration of justice (*see* § 3C1.1 [Obstruction of Justice [5]]), regardless of other factors." The district court found that Rafferty by his own admission testified untruthfully [6] at the detention hearing and obstructed the administration of justice within the meaning of section 3C1.1 by making an "intentionally false statement with respect to his address and telephone number to [the arresting] agents." Accordingly, the court did not give Rafferty a two-point downward adjustment for acceptance of responsibility.

In *United States v. Avila*, 905 F.2d 295, 298 (9th Cir.1990), we held that "the 1987 version of Application Note 4 expressly precludes a finding of acceptance of responsibility" where the court has found an obstruction of justice under section 3C1.1. We also determined that the 1989 amended version of Application Note 4, which provides that both adjustments may apply in "extraordinary cases," [7] "is not instructive on how to apply the 1987 version of the Application Note." *Id.* at 298. Therefore, having obstructed justice, Rafferty was not entitled to downward adjustment for acceptance of responsibility.

### III.  STANDARD OF PROOF

■ Rafferty claims the upward adjustment for obstruction of justice was based largely on disputed factual contentions and that the district court erred by not requiring those contentions to be established by a jury verdict upon proof beyond a reasonable doubt. Rafferty relies on *United States v. Davis*, 715 F.Supp. 1473 (C.D.Cal. 1989), wherein a district court held that the guidelines' failure to require proof beyond

a reasonable doubt of underlying factual contentions violated due process of law.

Rafferty's position is without merit. This type of argument was rejected by this court in *United States v. Wilson*, 900 F.2d 1350, 1354 (9th Cir.1990), and is clearly foreclosed by the Supreme Court's recent rejection of a similar due process challenge to Pennsylvania's Mandatory Minimum Sentencing Act. *See McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). *See also United States v. Restrepo*, 903 F.2d 648, 654–656 (9th Cir.1990) (preponderance of evidence standard defined for purposes of enhancing criminal sentence). In *McMillan*, the Court held that the due process clause is satisfied by application of a preponderance standard to factual findings made by the court during sentencing and "that there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." *Id.* at 91, 93, 106 S.Ct. at 2418, 2420. The Court reasoneḍ that a sentencing factor "comes into play only after the defendant has been found guilty ... beyond a reasonable doubt." *Id.* at 86, 106 S.Ct. at 2416.

Other circuits examining the standard of proof required by the guidelines agree that a preponderance of evidence standard is the proper measure. *See e.g., United States v. Carroll*, 893 F.2d 1502, 1506 (6th Cir.1990); *United States v. Gooden*, 892 F.2d 725, 728 (8th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990); *United States v. Guerra*, 888 F.2d 247, 251 (2d Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990); *United States v. McDowell*, 888 F.2d 285, 291 (3d Cir.1989); *United States v. Urrego–Linares*, 879 F.2d 1234, 1238

---

5. Section 3C1.1 provides: "If the defendant willfully impeded or obstructed ... the administration of justice during the investigation or prosecution of the instant offense, increase the offense level ... by 2 levels."

6. "[T]estifying untruthfully" is a specific example of an obstruction of justice justifying a two-point increase. *See* § 3C1.1 Application Note 1(c).

7. The November 1, 1989 amendment to Application Note 4 ˈprovides: "Conduct resulting in an

enhancement under § 3C1.1 (Willfully Obstructing or Impeding Proceedings) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." Sentencing Guidelines App. C, Amendment 258. The stated purpose of the amendment was "to provide for extraordinary cases in which adjustments under both § 3C1.1 and § 3E1.1 are appropriate, and to clarify the reference to obstructive conduct." *Id.*

(4th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989); *United States v. Wright*, 873 F.2d 437, 441 (1st Cir.1989).

## IV. $50,000 FINE

Rafferty claims the district court erred in imposing a $50,000 fine because: (1) it was under the mistaken impression it could impose two types of fines under the guidelines, only one of which was dependent on the defendant's ability to pay; and (2) it did not have sufficient evidence to find that he had the ability to pay the fine.

■ The district court explained at the sentencing hearing,

[t]here [are] two types of fines which this Court may impose in this case. There is a fine as part of the sentence ... that is not dependent necessarily on the defendant's ability to pay.

There is a second fine which is called for under the guidelines, and that is a fine which the Court must impose unless it specifically finds that he cannot pay it or there ... is insufficient information to indicate that he can pay it, to cover the cost of his incarceration and/or supervised release.

The court continued, "the imposition of the $50,000 fine will exhaust the defendant's financial resources ... known to the Court at this time and, therefore, there can be no further imposition of cost of incarceration in the matter because there is no known source of funds to pay that cost of incarceration and/or supervised release." The court did not consider Rafferty's forfeited property in assessing the fine.

The guidelines provide that "[e]xcept as provided in section (f) below, the court shall impose a [punitive] fine in all cases," in an amount determined in part by the defendant's ability to pay. *See* Sentencing Guidelines §§ 5E4.2(a), (d)(2).[8] Section 5E4.2(f) states that if the defendant establishes that he is not presently able or is not likely to become able to pay all or part of

the fine, the court must consider alternative sanctions (i.e., community service) in lieu of a fine. In addition, section 5E4.2(i) provides for an "additional fine," also subject to section (f), to pay the costs of any imprisonment, probation, or supervised release. It is therefore clear that the imposition of both types of fines is subject to the defendant's ability to pay.

■ The district court's error in this regard is irrelevant, however, because it did find that Rafferty had the financial resources to pay a $50,000 punitive fine. Rafferty claims that the fine should still be vacated because there was insufficient evidence of his ability to pay it—"neither the government or the court possessed any evidence that Rafferty had *any* remaining assets that had not been seized by the government." Rafferty claims that those seizures left him penniless and even in debt due to possible deficiencies following foreclosure.

■ The guidelines establish that it is the defendant's burden to prove he is unable to pay a fine. *See* Sentencing Guidelines § 5E4.2(f). Rafferty gave the probation officer written authorization to obtain financial information from institutions all around the country. The presentence report indicates, however, that upon the advice of counsel Rafferty otherwise "refused to provide any information regarding his financial status." The government also expressed its concern that there were other unidentified assets still out there carefully hidden under other aliases not yet discovered. In addition, one bank account containing approximately $80,000 was "zeroed out" shortly before Rafferty's arrest.[9]

■ The guidelines require the court to impose a fine unless the defendant establishes an inability to pay. Rafferty did not present any financial evidence whatsoever and in fact inhibited the government's own efforts to ascertain the true extent of his drug-related wealth. We find that Raffer-

---

**8.** Section 5E4.2 was renumbered 5E1.2 effective November 1, 1989.

**9.** Rafferty claims the $80,000 was used as a down payment on one of the properties subsequently seized by the government, although this is disputed by the government.

ty did not meet his burden of proof and thus the $50,000 fine, which was relatively small in comparison to his known wealth, was properly assessed.

*V. SPECIAL ASSESSMENT*

The court imposed a $75.00 special assessment but stayed its execution pending Supreme Court review of *United States v. Munoz–Flores*, 863 F.2d 654, 661 (9th Cir.1988), *cert. granted,* — U.S. —, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989). In a recent opinion, the Supreme Court reversed our holding in *Munoz–Flores* that the special assessment statute, 18 U.S.C. § 3013, was passed in violation of the origination clause of the Constitution. *United States v. Munoz–Flores,* — U.S. —, 110 S.Ct. 1964, 109 L.Ed.2d 384 (1990). Accordingly, we affirm the district court's imposition of the special assessment.

### CONCLUSION

We find no error in the imposition of the fine or the special assessment. We vacate the sentence and remand for resentencing in accordance with this opinion.

AFFIRMED IN PART, AND VACATED AND REMANDED IN PART.