**UNITED STATES of America, Plaintiff–Appellee,**

v.

**German Valentin RUIZ, Defendant–Appellant.**

**No. 90–50165.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1991.

Decided June 6, 1991.

Joseph T. Vodnoy, Los Angeles, Cal., for defendant-appellant.

Edward R. McGah, Jr., Asst. U.S. Atty., Santa Ana, Cal., for plaintiff-appellee.

Before BROWNING, D.W. NELSON and REINHARDT, Circuit Judges.

D.W. NELSON, Circuit Judge:

German Valentin Ruiz appeals his guideline sentence of 151 months for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). He claims that the district court erred in refusing to follow the holding of *United States v. Restrepo*, 883 F.2d 781 (9th Cir.1989) (*Restrepo I*), which was withdrawn between his plea agreement and sentencing, 896 F.2d 1228 (9th Cir.1990), and that such a refusal con-

stituted a violation of the ex post facto clause of the Constitution. *See* U.S. Const. art. I, §§ 9, 10. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 6, 1989, the grand jury returned a three-count first superseding indictment charging appellant Ruiz and a co-defendant with 1) conspiring to distribute approximately 200 kilograms of cocaine in violation of 21 U.S.C. § 846; 2) distributing approximately 2 kilograms of cocaine in violation of § 841(a)(1); and 3) possessing with intent to distribute approximately 50 kilograms of cocaine in violation of the latter section. Appellant pled guilty to the third count, and the government and appellant stipulated that the cocaine forming the basis for that count weighed 49, not 50, kilograms.

Following appellant's guilty plea, the United States Probation Office prepared a presentence report. In calculating the base offense level, the report added the 2 kilograms in count two to the 49 in count three. The combined quantity of 51 kilograms yielded a base offense level of 36. The report further recommended a two-level reduction for acceptance of responsibility, creating a total offense level of 34. This level and a criminal history category of I intersect at a range of 151–188 months. The district court adopted the recommendations of the presentence report and sentenced Ruiz to 151 months.

Appellant objected to the aggregation of the 2 kilograms in the calculation of the base offense level; without them, the base level would have been 34. Subtracting two levels for acceptance of responsibility would have translated into an offense level of 32 and a corresponding range of 121–151 months. Appellant correctly notes that under our decision in *Restrepo I*, which had been decided before his pleas, no aggregation of drugs present in nonconvicted offenses is allowed in determining offense levels. *Restrepo I*, however, was withdrawn three days before appellant was sentenced, 896 F.2d 1228 (9th Cir.1990), and

the sentencing court accordingly did not follow its holding. Asked at the sentencing hearing whether he was proposing that he be permitted to withdraw his plea, appellant answered that he was not moving "in any way, shape, or form ... [to] withdraw the plea." Appellant, nevertheless, claims that because he relied on *Restrepo I* in entering into a plea agreement, the district court has violated the ex post facto clause in ignoring this reliance and not applying *Restrepo I*.[1]

### STANDARD OF REVIEW

We review the legality of a criminal sentence de novo. *United States v. Rafferty*, 911 F.2d 227, 229 (9th Cir.1990).

### DISCUSSION

The issue this case presents is whether the district court's failure to apply *Restrepo I* violated due process. Ruiz argues that his whole purpose in pleading guilty to possession of the stipulated amount of *49* kilograms of cocaine was based on the reasoning in *Restrepo I*, which would have prohibited aggregation of the two kilograms from another charged, but dropped, count.

### A.

■ We first note that Ruiz' claim should be analyzed as falling under the due process clause of the fifth amendment, rather than the ex post facto clause of article one. As *Marks v. United States*, 430 U.S. 188, 191–92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977), explained:

> The *Ex Post Facto* Clause is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government. But the principle on which the Clause is based—the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties—is fundamental to our concept of constitutional liberty. As such, that right is protected against judicial action by the Due Process Clause of the Fifth Amendment.

*Id.* (citations omitted). The Court has also held that due process is violated when an act is made punishable under a pre-existing statute, but by means of an unforeseeable judicial enlargement of the statute. *Bouie v. City of Columbia*, 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702–03, 12 L.Ed.2d 894 (1964).

■ In *United States v. Albertini*, 830 F.2d 985 (9th Cir.1987), we held that an initially convicted defendant, whose conduct was vindicated on appeal, could rely on that latter decision in repeating the same conduct before the Supreme Court's reversal of the appellate decision. We explained:

> If the due process clause is to mean anything, it should mean that a person who holds the latest controlling court opinion declaring his activities constitutionally protected should be able to depend on that ruling to protect like activi-

---

1. We explain briefly why the subsequent history of *Restrepo* has no bearing on this case. *Restrepo I* stated that drugs from uncharged or non-convicted counts could not be aggregated. 883 F.2d at 786. After being withdrawn, 896 F.2d 1228 (9th Cir.1990), *Restrepo I*'s holding was reversed, and we decided that district courts could aggregate. *United States v. Restrepo*, 903 F.2d 648, 653 (9th Cir.1990) (*Restrepo II* ). Our change of heart was dictated by a clarifying amendment to the Guidelines. As amended, § 1B1.3, comment. (backg'd.), reads, in part: "[I]n a drug distribution case, quantities of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *Id. Restrepo II* was then ordered to be reheard en banc, 912 F.2d 1568 (9th Cir.1990), and was reheard on January 17, 1991. However, since the Guidelines have authoritatively settled the issue of aggregation, the en banc was called only to determine the standard of proof required for district judges to aggregate. Therefore, whatever happens in the en banc has no bearing on Ruiz' ex post facto claim.

   Appellant makes the additional argument that the district court applied *Restrepo II* retroactively, which constituted a violation of the ex post facto clause. This is simply untrue. Because *Restrepo II* was filed on May 8, 1990, whereas appellant was sentenced on March 5 of that year, it is impossible for the district court to have applied *Restrepo II*. What the district court did do was apply the Guidelines as it thought correct; *Restrepo II* and later amendments proved it right.

ties from criminal conviction until that opinion is reversed, or at least until the Supreme Court has granted certiorari. *Id.* at 989 (footnote omitted). *Albertini* noted that when defendants have been "entrapped" by acting in reliance on opinions that are later changed, " 'the argument in favor of recognizing the reliance defense is even more compelling, since courts are the very entities charged with interpreting the law.' " *Id.* at 990 (quoting *Kratz v. Kratz*, 477 F.Supp. 463, 482 n. 51 (E.D.Pa.1979)); *see also United States v. Moore*, 586 F.2d 1029, 1033 (4th Cir.1978) ("Of course, one ought not to be punished if one reasonably relies upon a judicial decision later held to have been erroneous."); W. LaFave & A. Scott, Substantive Criminal Law § 5.1, at 591 (1986) ("the better view is that it is a defense that the defendant acted in reasonable reliance upon a judicial decision, opinion or judgment later determined to be invalid or erroneous"), *quoted in Ostrosky v. State of Alaska*, 913 F.2d 590, 595 (9th Cir.1990). Ruiz' argument, therefore, is that because he relied on the opinion in *Restrepo I*, he cannot now be punished because of its withdrawal subsequent to his plea.

### B.

We believe that *Albertini* is distinguishable on two grounds. First, the language cited in the above section all refers to the later criminalization of actions that the defendant justifiably thought were legal at the time he committed them. This does not parallel the reversal of a court's prior incorrect interpretation of a statute and its implementation of a sentencing scheme that the defendant did not expect. We have upheld the constitutionality of this latter act numerous times.[2] Second, the mandate had never issued in *Restrepo I;* Ruiz was thus not entitled to rely on it as settled circuit law.

In all of the cases discussed in section A, *supra*, the issue centered on whether a

person could be *convicted* of a crime when relying on judicial opinions holding such action legal. We have a very different situation here. Ruiz saw his sentence enhanced because of the withdrawing of an opinion, but he was not convicted of any additional crime. We have dealt numerous times with a very similar sentencing problem. *See, e.g., United States v. Ramos*, 923 F.2d 1346 (9th Cir.1991); *United States v. Boise*, 916 F.2d 497 (9th Cir.1990); *United States v. Kincaid*, 898 F.2d 110 (9th Cir.1990); *United States v. Gonzalez–Sandoval*, 894 F.2d 1043 (9th Cir.1990). These cases concerned defendants who committed crimes during the period when the Sentencing Guidelines were deemed unconstitutional in this circuit, *see Gubiensio–Ortiz v. Kanahele*, 857 F.2d 1245 (9th Cir.1988), *vacated sub nom. United States v. Chavez–Sanchez*, 488 U.S. 1036, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989), but were sentenced after the Supreme Court's decision in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), upheld the constitutionality of the Guidelines. In those cases we consistently held that the defendants were properly sentenced under the Guidelines and that no due process violation occurred.

Most relevant for our purposes are *Kincaid* and *Boise*. In *Kincaid* the defendant pled guilty when the Guidelines were held to be unconstitutional, but was nonetheless sentenced under them. We affirmed, holding that there was no difference between pleas made and crimes committed before *Mistretta:* "[T]he defendant's reliance upon [the Guidelines' invalidity did not] constitute a 'substantially inequitable result' which would preclude retroactive application." *Kincaid*, 898 F.2d at 111. In *Boise* we rejected the defendant's argument that "he detrimentally relied on the unconstitutionality of the Guidelines in deciding to go to trial and in making strategic trial decisions," 916 F.2d at 505, and upheld his Guidelines sentence.

---

**2.** We do not decide whether an ex post facto violation would occur where a court sentenced a defendant on the basis of guidelines that were amended between the commission of the crime and sentencing to the disadvantage of the defen-

dant. We have earlier hinted that this would be a violation where "substantial personal rights" were altered to the disadvantage of the defendant. *Restrepo II*, 903 F.2d at 655.

These provide quite a close fit. Appellant argues that he detrimentally relied on the validity of *Restrepo I* in pleading guilty, only to discover its subsequent withdrawal. We cannot distinguish appellant's actions from those of the defendants in *Boise* and *Kincaid*. Neither thought that he would be sentenced under the Guidelines; yet, in both cases, we affirmed the sentence. We do not think that the district court's decision in this case works any more of a substantial inequity than was present in those other two cases.

The second distinction revolves around certainty of review and the issuance of the mandate. In *United States v. Ramos*, 923 F.2d 1346 (9th Cir.1991), we permitted Guidelines sentences to be applied to those who entered pleas while the Guidelines were declared unconstitutional. We noted that Ramos "was on notice that the guidelines were part of a properly enacted statutory scheme and that the Supreme Court had already granted certiorari in *Mistretta.* This notice removes the possibility of substantially inequitable results." *Id.* at 1358 (internal quotations and citations omitted). In *Ostrosky v. State of Alaska*, 913 F.2d 590 (9th Cir.1990), we refused to allow a defendant to rely on a lower court decision that upheld his conduct. We distinguished *Albertini* on the grounds that while the government had not yet petitioned for certiorari when Albertini acted, it had appealed in *Ostrosky*. Ostrosky therefore knew that his conviction would be reviewed. *Id.* at 598–99.[3] *Albertini* itself expressly left open "the issue whether Albertini would have been justified in relying upon [the appellate decision] in the period after the Supreme Court granted certiorari...." *Id.* at 989 n. 2. Finally, in *United States v. Foumai*, 910 F.2d 617 (9th Cir.1990), we stated, "No expectation of finality can attach during the period in which either party may appeal." *Id.* at 620 (citation omitted). Further,

> [t]he legitimacy of an expectation of finality of an appellate order depends on the issuance or not of the mandate required to enforce the order. We have stated that "[u]ntil a mandate is issued, a case is not closed. The parties may petition the court for a rehearing." ... [F]inality of an appellate order hinges on the mandate, as does a defendant's expectation of finality.

*Id.* (citations omitted).

In this case, *Restrepo I* was decided on August 24, 1989, and Ruiz' plea was entered on November 14. The government had filed its petition for rehearing by November, which we had not yet denied. In sum, *Restrepo I* was not yet fixed as settled Ninth Circuit law. We cannot say that appellant was foolish to rely on the interim validity of the decision; it was a good gamble, but one that did not pay off as he had hoped.

Finally, by placing ourselves in the shoes of the district court, we may observe that it clearly selected the best of the available options. The court could conceivably have followed the holding of *Restrepo I*, since the appellant relied upon it in pleading. Ruling on the basis of a decision that the court knows to have been withdrawn, however, is sure grounds for reversal. We cannot ask our district courts to cite obviously invalid precedent. The court, on the other hand, could have ignored the appellant's reliance on *Restrepo* because of its withdrawal and simply aggregated the other counts. This, though, might seem a rather harsh result. The optimum solution, therefore, would be neither to follow invalid precedent nor to punish Ruiz' expectation. In other words, the court's best move would have been to ask whether Ruiz desired to withdraw his plea, which is essentially what it did. Appellant's counsel explicitly rejected this possibility in the sentencing hearing. He stated that "this is not in any way, shape or form a motion [the court] withdraw the plea, not at all" and that "there is no basis for a withdrawal of the plea, I'm not making one." We cannot fathom what else the court should have done here.

**3.** We concede that a good part of the reasoning behind *Ostrosky* was that Alaska law did not preclude the state from continuing to enforce the statute while appealing the decision.

Because we are bound to follow the precedent of earlier sentencing cases and because *Restrepo I* had never become settled circuit law, we must affirm the district court's sentence. The only other solution we could prescribe—a withdrawal of the plea—was explicitly rejected by appellant.

AFFIRMED.

REINHARDT, Circuit Judge, concurring in the judgment.

The record of the sentencing hearing demonstrates that the government entered into a plea agreement with Ruiz knowing he would misunderstand its effect. At the time the agreement was reached, it was the government's undisclosed intention to ask that the defendant not be sentenced in accordance with *Restrepo I*. Moreover, the government knew that Ruiz entered into the agreement in the belief that *Restrepo I* would be applicable to his case. It was only because of that belief that the defendant sought the change from 50 to 49 kilograms. In the absence of *Restrepo I* the change would have been of absolutely no significance—as it ultimately turned out to be. The government deliberately did not inform Ruiz that it intended to argue to the district court that *Restrepo I* should not apply. Instead, through its silence, it misled him as to the practical effect of the bargain he negotiated. While the government may have breached no express promise, its actions display a lack of sensitivity to the nature of the prosecutor's role. Nonetheless, because Ruiz was given an opportunity to withdraw his plea, he was not prejudiced by the government's conduct. Accordingly, I concur in the judgment.