**UNITED STATES of America**

v.

**Victor CALAMARO.**

Crim. No. 17892.

United States District Court
E. D. Pennsylvania.

Jan. 9, 1956.

paper were 1,800 notations of numbers, each one of which was a three-digit number followed by a dash and another number. The officers described the slips of paper as "banker slips" and testified that from their experience in the numbers gambling business it was their opinion that the numbers on the sheets were notations of lottery bets or wagers, that the three-digit numbers in front of the dash were numbers which had been played and that the number following the dash showed the amount of money which had been played on the number which preceded the dash.

Defendant admitted to the officers at the time of his arrest that he had been picking up "numbers" for a period of three months and that for this work he had been paid $40 a week.

The evidence also showed that as a result of the evidence obtained at the time of the arrest on October 10, 1952, defendant was indicted in the Court of Quarter Sessions of Philadelphia County and charged with setting up an illegal lottery. The evidence showed also that defendant pleaded guilty to this charge and was sentenced thereon.

W. Wilson White, U. S. Atty., Norman Henss, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Thomas D. McBride, Philadelphia, Pa., for defendant.

GRIM, District Judge.

Defendant has been convicted of failing to pay the $50 special gambler's tax imposed yearly by the Internal Revenue Code, 26 U.S.C.A. § 3285 et seq.[1] He has moved for judgment of acquittal or in the alternative for a new trial.

The government called as witnesses two Philadelphia police officers who had had many years of experience in the suppression of vice and much experience in the suppression of numbers gambling. They testified that they arrested defendant on October 10, 1952, and that at this time he had in his pockets 48 sheets of paper which were three inches wide and seven inches long. On these sheets of

The Revenue Code provides, § 3285:

"(a) Wagers. There shall be imposed on wagers * * * an excise tax equal to 10 per centum of the amount thereof. * * *

"(d) Persons liable for tax. Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for and shall pay the tax under this subchapter on all wagers placed in such pool or lottery."

The Code also provides, § 3290:

---

1. The information charges: "That on or about the 10th day of October, 1952, at Philadelphia, Victor Calamaro * * * being a person liable for the payment of Special Occupational Tax imposed by Title 26 U.S.C. Sec. 3290, did accept wagers as defined in Title 26 U.S.C., Sec. 3285, without having previously paid the Special Occupational Tax imposed by Sec. 3290 due and owing to the United States."

"A special tax of $50 per year shall be paid by each person who is liable for tax under subchapter A or who is engaged in receiving wagers for or on behalf of any person so liable."

The Code also provides, § 3294:

"(a) Failure to pay tax. Any person who does any act which makes him liable for special tax under this subchapter, without having paid such tax, shall, besides being liable to the payment of the tax, be fined not less than $1,000 and not more than $5,000."

The numbers gambling business in which defendant was involved was operated by a proprietor or numbers bank. The proprietor employed numbers writers who made the contacts with the public and who actually sold the numbers and collected the money from the customers. The writers made records of their bets or wagers (the numbers played and the amount of money played thereon) and these records were conveyed to the numbers bank. However, the writers themselves did not bring these records to the numbers bank. This transportation or messenger work was done by other employees of the bank, known as pick-up men. Defendant was one of these pick-up men. The evidence does not show that he himself sold any numbers or handled any money, or that he was a proprietor of the business.

It is clear that the proprietor of the gambling business in which defendant was engaged was liable for a tax of ten per cent on the amount of all the wagers placed with him and that he was liable additionally for the special tax of $50 a year. It also is clear that the numbers writers were liable for the special tax of $50 a year. The question here is whether or not defendant, who did not contact the public and who handled no money was "engaged in receiving wagers for or on behalf of" his employer, the numbers bank.

■ Defendant contends that he was not "engaged in receiving wagers." I disagree with defendant's contention. In my opinion he was just as much engaged in receiving wagers as were the numbers writers. The numbers writers, of course, actually contacted the customers, took their money and assisted more directly in the making of the bets, but they were no more receiving wagers than was defendant, because they were all working not for themselves, but for their principal and it was the principal in fact who was making the wagers. Both the pick-up men and the numbers writers were assisting in the making and receiving of wagers and therefore all of them were "engaged in receiving wagers for or on behalf of" the numbers bank.

In Sagonias v. United States, 5 Cir., 1955, 223 F.2d 146, a pick-up man made the same contention as defendant is now making in the present case. In the Sagonias case the United States Court of Appeals for the Fifth Circuit ruled against the contention which defendant is now making. I agree with this decision.

■■ The numbers slips which were found on the present defendant's person at the time of his arrest were seized by the police officers, but they were not produced at the trial of the case. The government explained the failure to produce the slips by showing that they had been delivered to the Philadelphia Court of Quarter Sessions, and that after defendant had pleaded guilty and had been sentenced in that court the slips had been confiscated [2] by the District Attorney's office. Defendant contends that the slips were the best evidence against him and that because of their absence in the trial of this case he cannot properly be convicted. I disagree with this contention. The government was required to prove only that the slips had existed, that they were numbers slips, and that the defendant had been carrying them.

2. There was no evidence that the slips were lost or destroyed. The evidence showed only that they had been "confiscated."

The government had no burden and made no attempt to prove the specific contents of the slips. Consequently, the best evidence rule has no application to the problem presented by the failure to produce the numbers slips in the present case. See IV Wigmore on Evidence, Sec. 1242 (3rd Ed.1940) [3]; In re Ko-Ed Tavern, 3 Cir., 1942, 129 F.2d 806, 810, 142 A.L.R. 357. The failure to produce the slips affected the weight rather than the competency of the testimony of the policemen. The jury chose to believe the policemen and the government's explanation of the absence of the slips, as it had a right to do.

■ On May 6, 1952, the sections of the Internal Revenue Code involved in the present case were held to be unconstitutional by Judge Welsh of this court. United States v. Kahriger, D.C., 105 F. Supp. 322. The decision of Judge Welsh was reversed and the constitutionality of the statute was upheld by a decision of the United States Supreme Court dated March 9, 1953. United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754. Defendant was arrested on October 10, 1952. The evidence in the case connects him with an offense on that day and with offenses during the period of three months immediately prior thereto. Consequently, all of defendant's gambling activities occurred between the time of Judge Welsh's decision and its reversal by the Supreme Court. Defendant contends that because his alleged violation of the statute occurred after the time the District Court had declared the statute unconstitutional and before the time this decision was reversed on appeal, he cannot be held guilty of a crime in violation of the statute, particularly since he is being tried for a crime which allegedly was committed in the same district in which the statute had been held unconstitutional by a judge

of that district. With this contention I do not agree. Judge Welsh's decision was only that of a court of first instance. It was subject to reversal by an appellate court and indeed the decision had been appealed (the notice of appeal was filed on June 6, 1952) prior to the time when defendant engaged in the gambling activities for which he is now claiming immunity because of Judge Welsh's decision. I agree with the statement of the Supreme Court of the State of Iowa in its opinion in the case of State v. Striggles, 202 Iowa 1318, 210 N.W. 137, 138, 49 A.L.R. 1271, at page 1272, the statement being:

"There is no case cited, nor can we find one on diligent search, holding that the decision of an inferior court can be relied upon to justify the defendant in a criminal case in the commission of the act which is alleged to be a crime. We are disposed to hold * * * that when, the highest court of jurisdiction passes on any given proposition, all citizens are entitled to rely upon such decision; but we refuse to hold that the decisions of any court below, inferior to the Supreme Court, are available as a defense under similar circumstances. * * * It is settled law that in prohibitive statutes covering misdemeanors, where no provision is made as to intention, and the word 'knowingly' or other apt words are not employed to indicate that knowledge is the essential element of the crime, intention is not an element of the crime. * * * "

■ In the present case the problem was one of constitutionality rather than statutory construction, but in my opinion the principle of law expressed by the Striggles case applies both when the problem is one of statutory construc-

3. Wigmore states (p. 464); "Thus the [best evidence] rule applies only to the *terms of the document*, and not to any *other facts about* the documents. In other words, the rule applies to exclude testimony designed to establish the *terms*

of the document, and requires the document's production instead, but does not apply to exclude testimony which concerns the document without aiming to establish its terms."

tion and when the problem is one of constitutionality. The effect of a change in statutory construction has been presented to the Pennsylvania courts and the principle of law involved in a change of construction has been stated by the Pennsylvania Supreme and Superior Courts to be: Buradus v. General Cement Products Co., 159 Pa.Super. 501, 504, 48 A.2d 883, affirmed 356 Pa. 349, 52 A.2d 205, 208.

" * * * In general, the construction placed upon a statute by the courts becomes a part of the act, *from the very beginning*. And when former decisions are overruled, the reconsidered pronouncement becomes the law of the statute from the date of its enactment." [4]

It should be pointed out that the defendant did not take the stand and that he presented no evidence in the present case. There is nothing to indicate that he was in any way misled by Judge Welsh's decision or that he even knew of it, or that he would have paid the tax but for Judge Welsh's decision.

It should be emphasized that since the word "willful" was not used in the information defendant has been indicted and found guilty under Section 3294(a) of the statute by the terms of which knowledge and/or willfulness are of no significance in contrast to Section 3294 (c) under which willfulness is an essential element of the crime. Cf. United States v. Kahriger, 3 Cir., 1954, 210 F. 2d 565.

Defendant contends also that there is a variation between the information and the proof that he was charged with having "accepted" wagers while the proof showed that he "received" wagers. Defendant's reasoning is that since the section of the statute which refers to proprietors uses the word "accept" while the section of the statute which refers to employees uses the word "receive", an employee (not a proprietor) can be convicted properly only if he has been charged with having "received" wagers.

The United States Supreme Court has said in reference to the problem of variance in Berger v. United States, 295 U.S. 78, at page 82, 55 S.Ct. 629, 630, 79 L. Ed. 1314:

"The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense."

If the word "receive" had been substituted in the information for the word "accept" defendant would have no argument at all on his contention of variance. The words "receive" and "accept" as they are used in referring to part of a gambling business are so close in meaning that in my opinion, for indictment purposes, the use of one rather than the other in the case is of no significance at this stage of the case, that is, after the trial and the verdict. I cannot see how the use of the one word rather than the other could have taken defendant by surprise or in any way could have interefered with his presentation of his defense. The evidence, read with the information, shows clearly of what the defendant was convicted. He is amply protected against another prosecution for the same offense. See United States v. Richie, 3 Cir., 1955, 222 F.2d 436. I disagree with defendant's con-

---

4. There are statements to the same effect in other Pennsylvania cases. See City of Philadelphia v. Schaller, 148 Pa. Super. 276, 280, 25 A.2d 406; Menge v. City of Philadelphia, 36 Pa.Dist. & Co.

R. 352, 354. But this all-inclusive statement apparently is not the law in all the states. See Retrospective Operation of Overruling Decisions, 35 Ill.L.R. 121.

tention that there was a variance between the information and the proof.

Accordingly, defendant's motions for judgment of acquittal and in the alternative for a new trial will be denied.