Harold C. OSTROSKY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1362.

Court of Appeals of Alaska.

Oct. 3, 1986.

Sen K. Tan, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, Chief Judge, and COATS and SINGLETON, Judges.

## OPINION

COATS, Judge.

In *Ostrosky v. State*, 704 P.2d 786 (Alaska App.1985), we held that reasonable mistake of law based on an official misstatement is an affirmative defense, which the defendant must prove to the court by a preponderance of the evidence. *Id.* at 792. Because Ostrosky made an offer of proof in the trial court which presented a colorable claim of reasonable mistake of law, we remanded the case to allow Ostrosky an opportunity to further develop his defense. After a hearing on remand, Superior Court Judge Victor D. Carlson concluded that Ostrosky had not established the defense by a preponderance of the evidence and reimposed Ostrosky's original sentence. Ostrosky appeals the sentence imposed and Judge Carlson's rejection of the defense. We discuss them separately.

### I. REASONABLE RELIANCE

The "official misstatement" relied upon by Ostrosky was a decision by Judge Carlson holding that the Limited Entry Act was unconstitutional, which was later reversed on appeal. Other background facts relating to this appeal are set forth in our prior decision. *Ostrosky v. State*, 704 P.2d 786 (Alaska App.1985).

At the hearing on remand, Ostrosky called Frederick Paul, the attorney who represented him in his challenges to the Limited Entry permit system. Paul testified that he first met Ostrosky in 1978, when Ostrosky was charged with twelve counts of fishing without a permit. Ostrosky challenged the constitutionality of the act, but the district court refused to dismiss the charges, and Ostrosky was convicted. Apparently Ostrosky appealed to the superior court, again arguing that the

statute was unconstitutional. On January 7, 1981, Superior Court Judge Ralph E. Moody rejected the argument, finding it to be "without merit." In the interim, Ostrosky was charged in 1979 with fishing and possession of fish without a permit. Judge Moody, sitting without a jury in district court, found Ostrosky guilty of both counts on September 10, 1980. Ostrosky appealed the new convictions to the superior court, and Judge Carlson affirmed, refusing to hear argument on the constitutional challenge. However, Ostrosky's daughters were also charged in the 1979 cases. An attorney representing the daughters filed a motion for post-conviction relief, arguing that the Limited Entry Act was unconstitutional. Judge Carlson granted relief on these grounds, and Ostrosky himself was allowed to secure the benefit of this decision by joining the action. His 1979 convictions were set aside in August 1981. Ostrosky raised his reliance on those proceedings as a defense to a subsequent conviction for fishing without a permit, entered on November 16, 1983.

Through the course of the earlier proceedings, Paul and Ostrosky frequently discussed their commonly-held belief that the Act was unconstitutional. When the state appealed in Ostrosky's case, Paul filed a brief in response to the state's appeal, believing Ostrosky would prevail on appeal. Paul and Ostrosky talked regularly about the appeal. When asked if he told Ostrosky he could go fishing during this period, Paul answered

> No, I did not. I should explain that I don't think it's a function of a lawyer to make that kind of a decision for a client. I think that's the client's decision. I told him all the factors involved ... [T]here's certain areas of law that I don't think ... a lawyer has any business telling a client to do or not do something. I could tell him the consequences, and that's what I did.

Paul further testified that he knew the state had never applied for a stay of Judge Carlson's decision while the appeal was

pending, and this was one of the "factors" he discussed with Ostrosky.

On cross-examination, Paul explained that he told Ostrosky his fishing was not a crime under Judge Carlson's ruling, assuming there was no reversal on appeal. Ostrosky understood that there was a risk of reversal. Paul also told Ostrosky that "while technically, he was—he could be found guilty, ... there would be some amelioration." Paul also testified that there were no other cases that he knew of challenging the constitutionality of the entire Limited Entry Act.

Ostrosky also testified at the hearing on remand. He stated that he had been fishing commercially for thirty-seven years. When Judge Carlson set aside Ostrosky's 1979 conviction by written order declaring the Limited Entry Act unconstitutional, Ostrosky read the decision and agreed with it.

Ostrosky testified that he also relied on an article in the February 1982 issue of *Fisherman's Journal.* The article was titled "Kenai Magistrate Bases Decision on Ostrosky Case," and it explained that Magistrate Jess Nicholas had dismissed a fishing prosecution based upon Judge Carlson's decision in the *Ostrosky* case. Ostrosky stated also that he was aware the state had appealed Judge Carlson's decision, that he read the brief submitted by Paul in the appeal, and that he discussed the brief with Paul. Finally, Ostrosky testified that he knew that on July 8, 1983, the supreme court issued a stay of Judge Carlson's decision, at the state's request and testified that he did not fish after July 8.

On cross-examination, Ostrosky admitted that the article in the *Fisherman's Journal* also noted that the state planned to appeal Magistrate Nicholas' decision. When Ostrosky told Paul that he was going to fish in the 1983 season, Paul told him he ran the risk of being cited and prosecuted. Paul also told Ostrosky there was a "slight chance" that Judge Carlson's decision would be reversed by the supreme court. According to Ostrosky's testimony, Ostrosky understood that if Judge Carlson's decision were reversed he would

stand convicted of the 1979 offense. Paul never told Ostrosky that he would be immune from prosecution. Ostrosky knew that, if the Alaska Supreme Court found the limited entry system constitutional and the United States Supreme Court refused to hear the case, he would "have to bear the consequences." Ostrosky was also aware that, just prior to July 3, 1983, a friend named George Gottschalk, was cited for fishing without a permit. Ostrosky wasn't aware of anyone else being cited. Ostrosky testified that it was his belief that Judge Carlson's decision gave Gottschalk and others without permits the right to fish. In 1983, Ostrosky had not been stopped or cited prior to the July 3 incident. Although he fished in 1982, he was never stopped or cited in that year. When he sold fish to processors, Ostrosky either got cash or, if the processors refused to pay without seeing a valid permit, told the processors to defer payment until after the supreme court decision came down.

At the close of the evidence, Ostrosky argued that he had acted reasonably. The state argued that Ostrosky had failed to meet his burden of establishing by a preponderance of the evidence that his reliance on the 1981 order was reasonable.

Judge Carlson began his remarks by noting a discrepancy between the facts as developed at the hearing and the facts put forward in the offer of proof at Ostrosky's 1983 trial. Specifically, Ostrosky's original offer of proof included the assertion that Paul told Ostrosky that it was his understanding that Ostrosky was not going to be arrested for fishing without a permit during the 1983 season. *Ostrosky v. State,* 704 P.2d at 789. Judge Carlson noted that the evidence adduced at the hearing did not support this assertion. Judge Carlson went on to state:

An objective standard is what is to be applied. I find that on the face of the record, that no reasonable person could reasonably rely upon the trial court's decision in this case. It was on appeal, that fact was generally known, there was no legal advice that the defendant could fish

with impunity. I find that there's no reasonable mistake of law, the defendant knew what the law was and he was not advised by his lawyer that he could fish, he was only advised of the consequence of his actions. Specifically, he was not told that he could fish with impunity. I find he's failed to prove by a preponderance of the evidence that he made a reasonable mistake of law. In fact, the defendant was a civil disobedient, and he took the risk and knew he was taking the risk and accepting the responsibility for what he was doing. I find it's unreasonable to rely upon a ruling of the trial court in general, and specifically in this case, the decision was on appeal, and he knew this. He was testing the law, as shown by the record in this case and his related cases. The defendant is aware of legal proceedings, as shown by his letters to the editor, and other public statements which he has made, of which judicial notice can be taken because they're of common knowledge in the community, and his arguments and testimony in this case and the other fishing cases in which he's been involved. Therefore, the—I find that there is no reasonable mistake of law.

▮▮▮ We agree with Judge Carlson that Ostrosky failed to establish by a preponderance of the evidence the defense of reasonable mistake of law. In our decision remanding this case, we refused to rule that, as a matter of law, it is unreasonable to rely on a lower court decision that is on appeal. *Ostrosky v. State*, 704 P.2d at 792. We noted, however, that there is support in the cases and commentary on this issue that suggests that normally such reliance might be unreasonable. *Id.* The logic behind this position can be seen from Ostrosky's own case: Ostrosky understood there was a risk of reversal and that reversal would render his conduct on July 3, 1983, unlawful. Where there is a known risk that the conduct will ultimately be held unlawful, the policies behind the defense itself begin to dissipate. The defense is designed to recognize good faith reliance, not to encourage gambling, on the outcome

of criminal appeals. *See, e.g.,* 2 P. Robinson, *Criminal Law Defenses* § 183, at 387 (1984) ("The excusing condition for the defense requires that the actor not know his conduct is criminal and, indeed, honestly believe *that there is no risk of criminality*") (emphasis added). Our intent was merely to place the decision in the trial judge's hands.

We noted also in our prior decision that "[i]f other courts, particularly the superior courts, had held the Limited Entry Act constitutional, this would tend to undermine Ostrosky's defense of reasonable reliance, particularly if he was aware of those decisions." 704 P.2d at 792 n. 3. In fact, the superior court apparently rejected identical constitutional challenges made by Ostrosky in both his 1978 and 1979 cases. It was only in the third decision by a superior court that the challenge proved successful. This circumstance further undermined Ostrosky's defense.

Finally, we noted in our previous decision that "when a defendant is seeking to establish the defense of reasonable reliance on a judicial decision, the fact that he consulted an attorney and was told that the decision meant he could embark on a contemplated course of conduct is probative of evidence of the reasonableness of the reliance." *Id.* at 792 n. 2. As Judge Carlson correctly noted, rather than assuring Ostrosky that he could embark on the contemplated course of conduct, Paul specifically warned Ostrosky of the risk of reversal of Judge Carlson's 1981 order and the consequences of that reversal. Judge Carlson was not mistaken in concluding that Ostrosky was unreasonable in disregarding this risk.

Ostrosky argues in his reply brief that, because he had a favorable trial court ruling in his case, the defense of reasonable reliance was established as a matter of law. This argument appears to center on the fact that, even though the state had appealed, the state had not requested a stay of Judge Carlson's decision. However, Judge Carlson's 1981 order was simply to vacate Ostrosky's 1979 conviction. The "stay" ul-

timately requested by the state and issued by the supreme court had no legal effect on the ability of the state to prosecute those who fished in closed waters, despite the affidavit offered in support of the stay indicating that in fact a stay was needed. As Judge Carlson properly concluded at Ostrosky's 1983 trial, it was essentially irrelevant that a stay had not been requested as of July 3, 1983. While a mistaken belief that a stay was needed would be relevant to this defense, Ostrosky does not contend that this belief was communicated to him by anyone other than perhaps Paul. Moreover, it appears from other testimony that both Ostrosky and Paul understood that, regardless of the fact that no stay had been requested, if Judge Carlson's order were reversed, any fishing in 1983 would be chargeable.

### SENTENCE

This offense was a class B misdemeanor, 20 AAC 05.100(a) and AS 16.43.970(a), with a maximum sentence of ninety days' imprisonment, AS 12.55.135(b), and a fine of $10,000, AS 16.43.970(a). In November, 1983, Judge Carlson imposed a sentence of ninety days with sixty days suspended on condition that Ostrosky not be on or near a commercial fishing boat or fishing site for a period of three years. In addition, he imposed a fine of $10,000 and ordered that the fishing boat used in the 1983 offense be forfeited. *See* AS 16.05.195. The sentence was stayed pending appeal. In our decision remanding, we ordered that the sentence be vacated, and gave the following directive:

> In the event that the superior court rejects Ostrosky's defense of reasonable mistake of law, in passing sentence the superior court should consider whether Ostrosky intended to violate the law, the extent of his good faith, and the extent of the reasonableness of his belief that his actions were lawful. If Ostrosky did not intend to violate the law, that fact is a relevant consideration in sentencing.

704 P.2d at 793 n. 4 (citations omitted).

This language was brought to Judge Carlson's attention at resentencing. How-

ever, Judge Carlson immediately asked why the sentence should not be reinstated, given that Ostrosky intended to fish and intended to test the law. Defense counsel stressed that Ostrosky had a good faith belief that his conduct was lawful. Counsel also specifically objected to the conditions of probation (arguing that they were overbroad), to the fine (arguing that there had been no inquiry into Ostrosky's present ability to pay), and to the forfeiture (noting that the vessel had been transferred).

In allocution, Ostrosky stated that he had relied on the strength of Judge Carlson's decision, had believed it would be upheld, and still believed this position would ultimately prevail. Judge Carlson asked Ostrosky why he did not rely on Judge Moody's ruling instead. Ostrosky answered to the effect that, being last in time and perhaps being based on more information or more sophisticated arguments, Judge Carlson's decision seemed to have more weight.

In reimposing the same sentence, Judge Carlson made the following remarks:

> The facts which I had before me on the 14th of November, 1983, are still in existence. They really haven't changed. The things that I mentioned today about ... being a civil disobedient, being flagrant, are just as true now as they were on the 14th of November 1983. The fact that you led with your chin at every opportunity still exists. I did not impose a maximum sentence, I didn't intend to impose a maximum sentence. I intended to impose a sentence which states for the benefit of other members of the public who may be tempted to violate the Limited Entry Act that there is a significant penalty for doing so. That you're not going to get away with it, and they're not going to get away with it ... or they're going to pay a high penalty if they're caught and convicted. I think that the same purposes, for the sentence to deter others, and to reaffirm societal norms in this type of economic regulation, still exists. Rehabilitation isn't really an issue,

it's to make an effort to deter others from doing it.

In imposing the 1983 sentence, Judge Carlson relied upon an incident that occurred in connection with Ostrosky's offense. Apparently at least one cannery refused to accept salmon caught by Ostrosky, based on a statement by Fish and Game authorities that to do so would subject the cannery operators to prosecution. Ostrosky unsuccessfully tried to give the fish away; then in frustration he took the fish to the Fish and Wildlife Protection office in Naknek and essentially dumped them. When arrested a short time later, Ostrosky refused to go back and pick up the fish. He was charged with waste of salmon and littering for this incident, but these charges were eventually dismissed, as was a separate charge for fishing on July 6, 1983.

██ In light of Ostrosky's numerous offenses, and the incident at the fish and game office,[1] we cannot say that Judge Carlson was clearly mistaken in imposing ninety days of imprisonment with sixty suspended. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

However, we find merit in Ostrosky's arguments relating to the fine and the conditions of probation. At the 1983 sentencing, Judge Carlson stated that the $10,000 fine was due at 4:00 p.m. four days after sentencing. There was no on-record inquiry into Ostrosky's ability to pay the fine.[2] At resentencing, defense counsel specifically requested an evidentiary hearing on ability to pay the fine, noting "It is a lot of money and Mr. Ostrosky has been a commercial fisherman for many years, but has not engaged in his occupation since 1983." Judge Carlson stated:

He's probably been doing something else .... Being a very capable person, he's

probably been working. He seems healthy, keeping body and soul together. Defense counsel responded, "Barely, your honor. ... But he is not the man of position that he was, in 1983, when he could pay such a fine." Again, there was no inquiry or evidentiary hearing on ability to pay.

Because of Judge Carlson's refusal to inquire as to Ostrosky's ability to pay the $10,000 fine, despite representation that Ostrosky was in fact not able to pay such a fine and despite a specific request for an evidentiary hearing on the issue, we find we must remand the case for such an inquiry. *See Karr v. State,* 686 P.2d 1192, 1197 (Alaska 1984); *Manderson v. State,* 655 P.2d 1320, 1322–23 (Alaska App.1983); AS 12.55.035.

On remand, the court should also reconsider the special condition of probation that Ostrosky not be "on or about a commercial fishing boat or commercial fishing site anywhere in Alaska in any capacity whatsoever." In *Thomas v. State,* 710 P.2d 1017 (Alaska App.1985), we considered a similar restriction placed upon the skipper of a fishing vessel convicted of stealing crab pots. We noted that conditions of probation must be "reasonably related to the rehabilitation of the offender and the protection of the public and ... not unduly restrictive of liberty." *Id.* at 1019 (quoting *Roman v. State,* 570 P.2d 1235, 1240 (Alaska 1977)). We then stated:

Thomas has been a commercial fisherman in Alaska for sixteen years. This appears to be his primary occupation. On the other hand, Thomas' current offenses are closely tied to his occupation as a fisherman, and he has three prior commercial fishing violations for not having a commercial license. It appears to us that the trial court could reasonably

---

1. Judge Carlson stated:

   I find that you're the worst offender and therefore—and that you've also acted outrageously, the fracas that you caused down at the fish and game office, refusing to go back and get the smelling fish and so on, the nonsense which occurred because of that was—

you've opened yourself to being punished in the maximum way.

2. Judge Carlson did inquire, however, how it was that a public defender was appointed in the case. Ostrosky answered that since he was denied access to the fishery he was "broke" and "a pauper."

conclude that some restriction on Thomas' ability to fish commercially was related to his rehabilitation and was necessary to protect the public. However, since a restriction on Thomas' ability to fish commercially restricts his primary means of livelihood, we believe that the restriction must be particularly carefully scrutinized to make sure that it is narrowly drawn. It seems clear to us that the special condition of probation which prevents Thomas from engaging in any aspect of commercial fishing is far too broad.

710 P.2d at 1019.

The state argues that *Thomas* is inapposite because Thomas' criminal offenses merely happened to occur on a fishing boat, while Ostrosky's offense was the act of fishing itself. The state also notes that Ostrosky reportedly taunted other fishermen over the radia while fishing in 1983 and argues that Ostrosky's presence in commercial fishing areas might frustrate the state's efforts to enforce the Limited Entry Act and create "the potential for violence by other fishermen who possess valid permits."

It is possible that the public cannot be adequately protected by any less severe restrictions in Ostrosky's case. However, no such finding was ever made by the court, and the record as it stands could not support such a finding. Ostrosky, like Thomas, has long been engaged in commercial fishing. While he has no valid permit, there are many capacities in the commercial fishing industry that require no Limited Entry permit.[3] On remand, Ostrosky should be allowed to explain what, if any, legitimate activity in the realm of commercial fishing he may want to engage in, and Judge Carlson should consider this in determining what restriction is appropriate under *Roman* and *Thomas*.

The conviction is AFFIRMED. The portions of the sentence relating to the $10,000 fine and the conditions of probation are VACATED, and the case is REMANDED for further proceedings consistent with this opinion.[4]

---

3. In finding the condition in *Thomas* too broad, we recognized that Thomas had been convicted of fishing without a commercial license three times. 710 P.2d at 1019.

4. Ostrosky also appears to challenge the forfeiture order. However, in both his original brief and at the resentencing Ostrosky suggested that the vessel was no longer registered to him. The reviewing court will not reach issues where the underlying facts have not been resolved on the record. The issue is, therefore, not yet ripe. *See W.E.W. v. D.A.M.,* 619 P.2d 1023, 1025 (Alaska 1980).