**Harold C. OSTROSKY,**
**Petitioner–Appellee,**

v.

**STATE OF ALASKA; Roger V. Endell,**
**Commissioner of Corrections,**
**Respondents–Appellants.**

No. 89–35173.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1989.

Decided Aug. 28, 1990.

Before BROWNING, SCHROEDER and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

The State of Alaska and Roger V. Endell, Commissioner of Corrections, appeal the district court's grant of Harold Ostrosky's writ of habeas corpus. The district court held that the State of Alaska denied Ostrosky his right to due process under the fourteenth amendment because he had a right to rely on a prior Alaska superior court decision declaring the statute under which he was convicted unconstitutional, although the decision was pending on appeal before the Alaska Supreme Court. The district court did not rule on Ostrosky's other contention, that he has a right to have his reasonable mistake of law defense tried to a jury rather than a judge. On the first claim, we must address whether agreeing with Ostrosky would establish or grant Ostrosky the benefit of a new rule, impermissible in a habeas corpus action. We find that, although affirming on the due process claim would establish a new rule, it falls within an exception to the new rule prohibition. Upon reaching the merits, however, we reverse. The right to a jury trial may fall within the same exception. However, we hold that the writ should not be granted on the jury claim because Ostrosky explicitly waived his right to a jury.

## FACTS

The Alaska legislature enacted the Limited Entry Act ("Act") in 1973 to promote conservation and responsible management of Alaska's fishery resources. The Act and accompanying regulations limit the number of commercial fishers by permitting the Commercial Fisheries Entry Commission to issue a limited number of entry permits for each fishery. It further provides that no one may be the primary operator of commercial fishing gear or possess fish taken for a commercial purpose without an appropriate permit. Violation of the Act is a crime. Alaska Stat. § 16.43.970(a) (1987); Alaska Admin. Code tit. 20, §§ 05.-

Sidney K. Billingslea, Asst. Federal Public Defender, Anchorage, Alaska, for petitioner-appellee.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, Alaska, for respondents-appellants.

100(a), .110(a) (Oct.1988).[1]

Harold Ostrosky vigorously opposed the permit system. From the beginning, he fished openly without a permit, inviting arrest so that he could challenge the Act's constitutionality. He was convicted in 1978 in a state of Alaska district court on twelve counts of violating the Act. He appealed to the superior court, alleging that the Act was unconstitutional. On January 7, 1981, Superior Court Judge Moody upheld the Act's constitutionality and affirmed Ostrosky's 1978 convictions.

While those proceedings were pending in 1979, Ostrosky was convicted again for fishing without a permit. His daughters, who also were convicted, petitioned for post-conviction relief in 1981. On August 14, 1981, Superior Court Judge Carlson filed a memorandum decision declaring the Act unconstitutional and vacating the daughters' convictions. Subsequently, Ostrosky was permitted to join in his daughters' petition. On August 25, 1981, Judge Carlson set aside Ostrosky's 1979 conviction based on the reasons set forth in the memorandum decision.

While the state's appeal of Judge Carlson's decision was pending, Ostrosky again went fishing without a permit. On July 3, 1983, a Fish and Wildlife Protection Officer boarded his boat while Ostrosky had commercial fishing gear in the water. Ostrosky told the officer he did not have a permit, but the officer did not cite Ostrosky at that time.

On July 7, the state applied to the Alaska Supreme Court for an emergency stay of Judge Carlson's ruling.[2] The application stated, "A stay of the Memorandum Decision is necessary to accord the Division of Fish and Wildlife Protection the necessary authority to arrest Mr. Ostrosky for violation of [the Act]." A single justice granted the stay on July 8, stating that "[t]he intent of this order is to permit the continued enforcement of the Limited Entry Act pending this court's decision on the merits." The same day, the wildlife officer issued Ostrosky two citations, one for fishing without a permit on July 3, and one for possession of salmon without a permit on July 8.[3] On July 19, the Alaska Supreme Court reversed Judge Carlson's ruling and held that the Act was constitutional. *State v. Ostrosky*, 667 P.2d 1184 (Alaska 1983) [hereinafter *Ostrosky I*].

*Trial and First Appeal on the 1983 Charges*

At his trial before Judge Carlson in November 1983 for the July 1983 charges, Ostrosky first moved to dismiss the illegal fishing charge on the ground that the Limited Entry Act did not apply to him because he had been a party in a post-conviction proceeding in which Judge Carlson had declared the Act unconstitutional. Upon this motion's denial, Ostrosky asked the judge for an advance ruling on whether he could present evidence and get a jury instruction on the defense of reasonable reliance on the ruling holding the Act unconstitutional and vacating his prior sentence. The judge ruled that the defense was unavailable to Ostrosky because he had assumed the risk that the Alaska Supreme Court would reverse. Ostrosky then waived his right to a jury trial, preserving his right to appeal Judge Carlson's rulings on his motion to

---

**1.** Alaska Stat. § 16.43.970 was § 16.43.360 until 1983, when it was renumbered.

**2.** Not only was Ostrosky fishing without a permit; he was also taunting other fishers with the fact that he was fishing without a permit. The state alleged in its stay application that Ostrosky was creating a serious danger of violence with his taunts and that he was damaging the fishery resources.

**3.** The contact between Ostrosky and the officer on July 8 appears to have been initiated by Ostrosky. Ostrosky had some 56–hour–old fish that he couldn't sell without a valid permit. He called the officer to find out if he was going to be arrested. The officer went to see him and told him to try and sell the fish, in the state's name if he had to. He also issued the citations on this visit.

Ostrosky was unable to sell the fish and dumped them on the steps of the Fish and Game office. When he was told to stop, he drove around to the back of the building and dumped more there. When an officer came around there, Ostrosky sped away, the remaining fish "sailing off the back end" of his truck. Appellant's Brief at 7. For this, the state charged him with waste of fish and littering but later dropped these charges.

dismiss and on the availability of the mistake of law defense.[4] After a bench trial, Judge Carlson found Ostrosky guilty.[5]

Ostrosky appealed, arguing that to prosecute him violated his due process rights and that the trial court should have permitted him to argue the defense of reasonable reliance on a mistake of law. The Alaska Court of Appeals recognized a limited defense of reasonable mistake of law for fish and game offenses,[6] which the defendant must prove to the trial court by a preponderance of the evidence. *Ostrosky v. State*, 704 P.2d 786, 791–92 (Alaska Ct.App. 1985) [hereinafter *Ostrosky II* ]. The court remanded for an evidentiary hearing, directing the trial judge to consider Ostrosky's status as a party to another proceeding in which the Act was held unconstitutional along with other facts but noting that this status did not, *per se*, compel dismissal of the charges. *Id.* at 792–93 & n. 4 ("We have not found any authority which indicates that Judge Carlson's decision would be binding on the parties until the decision was stayed or overturned but would not necessarily be binding on anyone else.").

The Alaska Supreme Court denied Ostrosky's petition for certiorari.

*Remand and Second Appeal of 1983 Charges*

On remand, the superior court found that Ostrosky had not reasonably relied on the prior lower court decision to shield his current activities from prosecution. It found that Ostrosky's lawyer had advised Ostrosky that he was risking further prosecution by fishing before Judge Carlson's ruling was upheld on appeal and that he had not told Ostrosky that he could fish with impunity.[7]

Ostrosky appealed again. The Court of Appeals affirmed the trial court's finding that the trial court was not clearly erroneous in finding that Ostrosky had not proved reasonable reliance on a mistake of law by a preponderance of the evidence. *Ostrosky III*, 725 P.2d at 1090.[8]

*Federal Court Proceedings*

The federal district court addressed two claimed grounds for relief in Ostrosky's 1986 petition for habeas corpus: that the state court denied Ostrosky due process by prosecuting him after he had successfully challenged the constitutionality of the Limited Entry Act in superior court, and that the state denied him the right to a jury determination of the defense of reasonable mistake of law.[9] The magistrate recommended granting the petition on the second ground. The district court did not decide the jury issue, however, and instead concluded that the state charges should be dismissed because the prosecution violated due process. *Ostrosky v. Alaska*, No. A86–660 Civ. (D. Alaska Feb. 16, 1989).

## JURISDICTION

We have jurisdiction of the appeal from the district court's order on the habeas corpus petition under 28 U.S.C. § 2253.

---

4. The state agreed to proceed only on the fishing without a permit charge, with the understanding that if Ostrosky were convicted, the state could rely on the other charges in its sentencing arguments.

5. Judge Carlson sentenced Ostrosky to 90 days in jail with 60 days suspended, fined him $10,-000, required him to forfeit his fishing vessel, and placed him on probation for 3 years on the condition that he not engage in commercial fishing. The court of appeals eventually vacated the fine and condition of probation. *Ostrosky v. State*, 725 P.2d 1087, 1092–93 (Alaska Ct.App.1986) [hereinafter *Ostrosky III* ].

6. The court noted that these offenses are *malum prohibitum*, not *malum in se. State v. Ostrosky*, 704 P.2d 786, 791 (Alaska Ct.App.1985).

7. The lawyer, however, had been optimistic that the supreme court would affirm. Ostrosky also claimed to rely on a magistrate's dismissal of a similar case, based on Judge Carlson's ruling, that was reported in the Fisherman's Journal. The article stated that the state planned to appeal the magistrate's decision.

8. Ostrosky did not petition the supreme court for review of the second appeal.

9. Ostrosky did not exhaust a third ground in state court and amended his petition to delete it. He did petition for review to the Alaska Supreme Court after his first appeal on the two grounds presented to us.

## STANDARD OF REVIEW

We review the district court's decision to grant a petition for writ of habeas corpus *de novo*. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir.), *cert. denied*, 488 U.S. 982, 109 S.Ct. 533, 102 L.Ed.2d 565 (1988).

## DISCUSSION

### I. DUE PROCESS CLAIM

A. *New Rule Inquiry*

■ The Supreme Court has recently restricted federal courts' ability to apply new rules in ruling on petitions for habeas corpus. A case announces a new rule, in general, when it "breaks new ground or imposes a new obligation on the States or the Federal Government," or alternatively, "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989) (plurality opinion); *see also Butler v. McKellar*, — U.S. —, 110 S.Ct. 1212, 1216, 108 L.Ed.2d 347 (1990). We cannot apply a new rule "retroactively to defendants on collateral review unless it falls within one of two exceptions." *Penry v. Lynaugh*, — U.S. —, 109 S.Ct. 2934, 2952, 106 L.Ed.2d 256 (1989). We can apply a new rule if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or "prohibit[s] a certain category of punishment for a class of defendants because of their status or offense." *Id.* at 2952–53 (internal quotations and citations omitted). Under the second exception, we can apply a new rule "if it requires the observance of those procedures that ... are implicit in the concept of ordered liberty" "without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 109 S.Ct. at 1073, 1077 (internal quotations omitted); *see also Butler*, 110 S.Ct. at 1218. Such procedures are "central to an accurate determination of innocence or guilt." *Teague*, 109 S.Ct. at 1077.

Ostrosky asks us to hold that, under the due process clause of the fourteenth amendment, a defendant has a right to rely as a matter of law on a lower court decision in his own case that a statute is unconstitutional even though the case is on appeal to a higher court. Although such a holding would establish a new rule, we find that Ostrosky's requested rule falls within the second exception to the new-rule prohibition.

■ A "culpable state of mind" historically has been necessary for criminal conviction. *Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952). As Justice Jackson eloquently expressed,

The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory "But I didn't mean to".... Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will."

*Id.* at 250–51, 72 S.Ct. at 243–44 (footnotes omitted). More recently, the Court has confirmed that " '[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence.' " *United States v. United States Gypsum Co.*, 438 U.S. 422, 436, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978) (quoting *Dennis v. United States*, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951)). Commenting on *Morissette*, the Court stated that "[a]lthough Blackstone's requisite 'vicious will' has been replaced by more sophisticated and less colorful characterizations of the mental state required to support criminality, intent generally remains an indispensable element of a criminal offense." *Id.* 438 U.S. at 437, 98 S.Ct. at 2873 (citation omitted).

The purpose of a mistake-of-law defense is to negate the mental state that the defendant must have to be guilty of the charged crime. *See, e.g.,* Model Penal Code § 2.04 explanatory note (1985); W. LaFave & A. Scott, Substantive Criminal Law § 5.1, at 575 (1986). Without such a mental state, the defendant cannot be guilty. A necessary element of the crime is missing. Ostrosky asserts that reliance on a lower court holding of unconstitutionality in his own case negates any criminal intent.[10] If he is right, the resulting rule concerns the core of the second exception to the new rule prohibition: the defendant's guilt or innocence. We must therefore address the merits of his claim.

### B. *Reliance on a Lower Court Decision*

■ The general rule in the common law system has always been that mistake of law is not a defense to a criminal offense. *See Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) ("the rule that 'ignorance of the law will not excuse' ... is deep in our law"). Some courts and legislatures, however, have made exceptions, establishing that a reasonable mistake of law, for example, mistaken reliance on a judicial decision, is a defense.[11] Some scholars also have asserted that a defendant should be able to assert reasonable reliance on a judicial decision, although later overruled. W. LaFave & A. Scott, *supra* § 5.1, at 591 ("the better view is that it is a defense that the defendant acted in reasonable reliance upon a judicial decision,

opinion or judgment later determined to be invalid or erroneous"); R. Perkins, Criminal Law 1041–42 (3d ed.1982). Although Perkins indicates that this defense has been much more limited when a defendant has relied on a lower court decision, he asserts it should not be. *Id.* In addition, Model Penal Code § 2.04(3)(b) permits a defense of "reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in ... a judicial decision, opinion or judgment."

■ Ostrosky asserts that he should be able to rely on a lower court decision holding the statute unconstitutional in a previous case in which he was a party,[12] when the case has not yet been reversed or overruled, although the decision was pending on appeal.[13] Ostrosky grounds his claim in the fourteenth amendment due process clause. Neither Ostrosky nor the Alaska appellants specify exactly how Ostrosky's due process rights were violated. We interpret his objection to the procedure Alaska followed in convicting him to be that he had no notice that Alaska would seek to and be permitted to enforce a statute against him that had been found unconstitutional in his own prior criminal proceeding.

Ostrosky's notice argument reaches further than the generally accepted parameters of the notice requirement. The Supreme Court has stated that "there can be

---

**10.** We do not think that Alaska would find Ostrosky's crime a strict liability offense. In *Reynolds v. State,* 655 P.2d 1313 (Alaska Ct.App. 1982), the court found that conviction of another fish and game misdemeanor required a negligent mental state.

**11.** *See, e.g., id.* (holding that a Los Angeles municipal ordinance making it an offense for a person convicted of a crime that would be a felony under California law to remain in the city for more than five days without registering with the Chief of Police violated due process, because the person had no actual knowledge of the duty and there was no showing of probability of such knowledge).

**12.** The parties contest the court of appeals's interpretation of Judge Carlson's decision setting aside Ostrosky's 1979 conviction. Ostrosky alleges that Judge Carlson found the Act uncon-

stitutional *in his case,* supporting his reliance claim. The government says Judge Carlson only set aside Ostrosky's conviction. The court of appeals asserted that the unconstitutionality ruling occurred in a case in which Ostrosky was a party, 704 P.2d at 792, and its construction of a state court decision is, absent a due process violation, beyond challenge on federal habeas. *Tibbs v. Florida,* 457 U.S. 31, 46–47, 102 S.Ct. 2211, 2220–21, 72 L.Ed.2d 652 (1982) (Florida Supreme Court's interpretation of its own opinion).

**13.** Other facts complicate Ostrosky's claim on a factual level. For example, another superior court had ruled in another criminal proceeding against Ostrosky that the statute was constitutional.

no doubt that at a minimum [the due process clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). The Court went on to specify that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. The state must take reasonable steps to inform parties of adjudicatory proceedings affecting them specifically.

The state has no duty, however, to inform third parties of adjudicatory actions which may concern them indirectly (by setting new judicial precedent, for example) or to inform specific persons of legislative or administrative actions that affect the populace at large. Publishing statutes and regulations and reporting judicial decisions is sufficient to put people on notice of their contents. *See Texaco, Inc. v. Short*, 454 U.S. 516, 535–37, 102 S.Ct. 781, 795–96, 70 L.Ed.2d 738 (1982).

Ostrosky claims that he properly concluded that the superior court's unconstitutionality holding meant the state could not enforce the statute against him, at least as long as that decision withstood reversal or overruling. He had no warning that the state would be able legally to continue to enforce the statute against him. To the extent that the result Ostrosky requests requires us to extend the due process notice requirement to notice that the state will take a certain approach to enforcing a published statute, it is unprecedented.

More concretely, two other hurdles confront Ostrosky.

First, under Alaska law, the superior court's holding that the statute is unconstitutional does not preclude the state from continuing to enforce the statute while the decision is on appeal. *Ostrosky III*, 725 P.2d at 1091 (government did not need stay of unconstitutionality decision to prosecute Ostrosky on new charges under the statute). Second, Alaska superior court decisions are not binding on other Alaska superior courts.[14] Ostrosky's knowledge of this Alaska law is presumed. He also had actual notice. In a previous criminal prosecution for violation of the same statute, another superior court judge found it unconstitutional. Alaska has the authority to decide, without violating the due process clause, what effect an Alaska lower court decision that a state statute is unconstitutional will have on the statute's enforcement and what authority Alaska superior courts have to bind each other. Because Judge Carlson's decision did not bar the state from enforcing the statute and the decision bound no other superior court, and because Ostrosky had actual notice, he cannot claim that he had no warning that the state would be able to convict him for other violations of the same statute.

Ostrosky argues nevertheless that case law exists to support his claim. Case authority on the defense of reasonable mistake of law in the context of a lower court decision in the defendant's previous prosecution is uncommon, but some of it indeed lends support to Ostrosky's position. A review of this case law demonstrates, however, that it does not justify the result Ostrosky seeks.

The most significant authority cited by Ostrosky is *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).[15] The Court held that the fifth

---

**14.** Ostrosky's saga graphically illustrates this fact. Judge Moody's decision in Ostrosky's first prosecution holding the statute constitutional did not bind Judge Carlson in the collateral proceeding on Ostrosky's second prosecution, in which he held the statute unconstitutional.

**15.** *Kratz v. Kratz*, 477 F.Supp. 463, 481 (E.D.Pa. 1979), cites *Marks* and two other Supreme Court

cases, *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), and *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), for the proposition that due process requires permitting the reasonable mistake-of-law defense. In *Cox* and *Raley*, the Court held that, under the due process clause, the government cannot affirmatively tell defendants that they can rely on a government statement of the law

amendment due process clause precluded applying new, stricter obscenity standards, announced by the Supreme Court after defendants were charged but before they were tried, to the defendants because they did not have fair warning of the conduct that would give rise to criminal penalties.[16] *Marks* presents an issue similar to Ostrosky's: whether the due process clause prevents applying "new law." The nature of Ostrosky's claim, however, displays a crucial difference from *Marks*. Marks had no warning at all of the law applied to him, obscenity standards newly announced by the highest court in the land. Ostrosky, and anyone claiming reliance on a lower court holding that a statute is unconstitutional, has a great deal more warning. The statute is published (and in Ostrosky's case has been applied by another superior court in another case to convict him), and the government routinely appeals lower court holdings of unconstitutionality (Ostrosky knew that the government had appealed in his case). It will also be true in many cases, as we have noted it is in Ostrosky's, that the decision is not binding on other courts and the government may continue to prosecute violations of the statute.

Ostrosky leans heavily on *United States v. Albertini*, 830 F.2d 985 (9th Cir.1987) [hereinafter *Albertini II*]. Albertini was convicted of distributing political leaflets outside the gate of the Pearl Harbor naval base on two separate days. On appeal of a previous conviction, the Ninth Circuit had held that a conviction under similar circumstances violated the first amendment. *United States v. Albertini*, 710 F.2d 1410 (9th Cir.1983) (hereinafter *Albertini I*), rev'd, 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985). The government petitioned for certiorari in *Albertini I* between Albertini's two days of leafletting in *Albertini II*. The United States Supreme Court eventually reversed *Albertini I*. *United States v. Albertini*, 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985). Albertini al-

leged that his later convictions in *Albertini II* violated due process because he should be able to rely on the previous Ninth Circuit decision in his own case.

The court in *Albertini II* stated,

> The narrow question we must decide is whether a person whose conduct has been tried in court and vindicated on appeal can rely upon the court's decision in repeating the same conduct after receiving the appellate judgment, when the government has either filed a petition for certiorari or still has time to file such a petition, and the Supreme Court has not acted to grant or deny the petition.

830 F.2d at 988. The court held that the convictions violated due process. It explained,

> In effect, Albertini obtained a declaratory judgment from this court that the actions in which he engaged were lawful. If the due process clause is to mean anything, it should mean that a person who holds the latest controlling court opinion declaring his activities constitutionally protected should be able to depend on that ruling to protect like activities from criminal conviction until that opinion is reversed, or at least until the Supreme Court has granted certiorari.

*Id.* at 989. The court refused to reach the issue of whether the due process clause would permit Albertini to rely on the previous Ninth Circuit decision in the period after the Supreme Court granted certiorari and before it reversed. *Id.* n. 2.

Ostrosky and the district court rely on the broad language in the second block quotation above, and the government relies on the court's specific limitation of that language and holding in the first block quotation. *Albertini II* should be distinguished from Ostrosky's case. When Albertini committed the first leafletting act, the government had not yet petitioned for certiorari; and when he committed the sec-

---

and then convict them for behavior in reliance on the statement. Ostrosky's case does not present such entrapping government behavior.

**16.** *Marks* relied on two previous cases that reversed convictions under unforeseeable judicial

constructions of state law. *See Rabe v. Washington*, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972); *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

ond, the Court had not yet granted it. *Albertini II*, itself, excepted from its holding cases in which certiorari review has been granted. The certainty of review when certiorari has been granted parallels the certainty of review on an appeal as of right, the situation in the case before us; both are quite different from the case in which review is unlikely because of the very slight possibility of certiorari being granted. Ostrosky knew that his conviction would be reviewed; Albertini did not.

The state also distinguishes *Albertini* by noting the big difference between relying on an appellate court as opposed to a trial court decision. The scholars cited above, *supra* p. 595, also make this distinction; courts and legislatures that have permitted a reasonable mistake of law defense have usually permitted reliance only on higher state or federal appellate court decisions.[17] Those courts' decisions more likely carry precedential authority for other courts. Alaska did not limit the reach of the defense to higher court decisions, but it did hold that the court level would be a factor in the reasonableness evaluation. *See Ostrosky II*, 704 P.2d at 792.

Other cases cited to us are also inapposite. In *United States v. Mancuso*, 139 F.2d 90 (3d Cir.1943), a draftee had obtained mandamus relief from the federal district court, staying his induction into the armed forces. Mancuso ignored the draft board's subsequent order that he report. The Third Circuit held that Mancuso was excused from the later induction order because the countervailing stay order, though erroneous, was outstanding. *Id.* at 92.

Mancuso could not be expected to know which to follow.[18]

In *Kratz v. Kratz*, 477 F.Supp. 463 (E.D. Pa.1979), a civil divorce suit, the wife accused the husband of violating a federal eavesdropping statute when he tapped her phone. The husband had consulted a lawyer, who told him the wiretapping was legal. He had relied on a previous Fifth Circuit interpretation of the statute, but a controlling Eastern District of Pennsylvania case had been handed down several months before the lawyer's advice holding such wiretapping illegal. The court acknowledged the delay in reporting cases and concluded that whether a reasonably diligent lawyer should have discovered the case was an unresolved question of fact precluding summary judgment. Kratz did not seek and the court did not find reliance on the Fifth Circuit opinion an excuse as a matter of law, and to do so would have been incomprehensible in the face of the contrary, controlling authority.[19]

In *United States v. Calamaro*, 137 F.Supp. 816 (E.D.Pa.), *rev'd on other grounds*, 236 F.2d 182 (3d Cir.1956), *aff'd*, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957), Calamaro was convicted under an Internal Revenue Code provision requiring persons engaged in certain gambling activities to pay a special tax. A court in the same district that had jurisdiction of Calamaro's case had found the provision unconstitutional. Calamaro was arrested after this ruling but before its subsequent reversal by the Supreme Court. The district court did not agree that Calamaro could rely on the previous district court decision,

---

17. *See, e.g., People v. Dean*, 73 Ill.App.3d 501, 29 Ill.Dec. 500, 392 N.E.2d 57 (1979); *State v. V.F.W. Post No. 3722*, 215 Kan. 693, 527 P.2d 1020, 1025 (1974); *Leon v. United States*, 136 A.2d 588 (D.C.1957); *State v. Striggles*, 202 Iowa 1318, 210 N.W. 137, 138 (1926); Ala.Code § 13A–2–6(b) (1975); Ill.Rev.Stat., ch. 38, para. 4–8(b)(3) (1989); Kan.Stat.Ann. § 21–3203(2)(c) (1988); La.Rev.Stat.Ann. § 14:17(2) (West 1986); Mo.Ann.Stat. § 562.031.2(2)(b) (Vernon 1979); Mont.Code Ann. § 45–2–103(6)(c) (1989).

18. We note that Ostrosky claims the government could not enforce the statute after the unconstitutionality judgment without a stay of the judgment. The Alaska Court of Appeals held that

the stay was not necessary to allow the wildlife officials to arrest Ostrosky. *Ostrosky III*, 725 P.2d at 1091. This state court interpretation of state law is not subject to challenge on habeas. *Rose v. Hodges*, 423 U.S. 19, 21–22, 96 S.Ct. 175, 177–78, 46 L.Ed.2d 162 (1975) (per curiam).

19. Ostrosky also cites *United States v. Barker*, 546 F.2d 940 (D.C.Cir.1976), in support. The two judges in the *Barker* majority agreed that defendants could argue a mistake of law defense, although they could not agree on the proper test for establishing such a defense. Both tests, however, require a factual determination and do not permit the defense as a matter of law.

let alone rely on it as a matter of law. The court's

decision was only that of a court of first instance. It was subject to reversal by an appellate court and indeed the decision had been appealed ... prior to the time when defendant engaged in the gambling activities for which he is now claiming immunity because of the [district court's previous] decision.

*Id.* at 819.[20]

■ None of these cases support Ostrosky's claim that due process requires that he be allowed to rely as a matter of law on a lower court decision in his own case pending on appeal.[21] Alaska permitted him to argue the reasonable mistake of law defense, and states generally may define the defenses permissible in criminal cases. *See Powell v. Texas,* 392 U.S. 514, 536, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254 (1968) (plurality opinion). He is entitled to nothing more under the due process clause. He had fair notice of the consequences of his action, and his prosecution was not fundamentally unfair.

## II. JURY CLAIM

■ Ostrosky's second claim in his habeas petition, not reached by the district court,[22] is that the reasonable mistake of law defense should be tried to a jury, not the court. Under the Alaska constitution, each defendant to a criminal charge exposing her or him to incarceration has the right to a jury trial. *Baker v. City of Fairbanks,* 471 P.2d 386 (Alaska 1970); Alaska Const. art. I, § 11. Ostrosky ex-

plicitly waived this right on the condition that he be allowed to appeal the trial court's denial of his motion to dismiss and refusal to permit the mistake of law defense. Ostrosky apparently made a strategic decision to take his chances with the judge. He cannot now seek a jury trial when he has waived that right.

## CONCLUSION

We reverse the district court's grant of a writ of habeas corpus on the due process claim and hold that the writ should also be denied on the jury claim.

**20.** The court added that the defendant presented no evidence that he was misled by the previous decision or would have paid the tax but for the decision. *Id.* at 820.

**21.** Three state court decisions also address the issue of reliance on a lower court opinion. *State ex rel. Williams v. Whitman,* 116 Fla. 196, 156 So. 705 (1934); *State v. Striggles,* 202 Iowa 1318, 210 N.W. 137 (1926) (defendant not entitled to rely on decision of highest Iowa court later reversed by United States Supreme Court); *State v. Longino,* 109 Miss. 125, 67 So. 902 (1915) (cruel to hold defendant accountable for conduct committed between state supreme court judgment that such conduct did not constitute violation of state statute and supreme

court overruling decision, but holding limited to "this case"). None of the courts deciding these cases considers the reliance claim in the context of federal due process law. *Williams* appears to favor Ostrosky; the decision seems to hold that reliance on a lower court decision later reversed was reasonable as a matter of law. The court indicates, however, that the defense is a question of fact, not law, in finding that the charges should have been dismissed "under the facts and circumstances" of Williams's case. 156 So. at 709.

**22.** The magistrate recommended that the writ be granted unless the state granted a jury trial. The district court decided the case on the due process ground.